GEORGE S. WILDEY and Others, Plaintiffs, *v.* JOHN J. McELLIGOTT, as Fire Chief, and Commissioner, etc., and FIORELLO H. LA GUARDIA, Constituting the Board of Retirement of the City of New York, and Others, Defendants.

Supreme Court, Special Term, New York County, March 5, 1938.

Samuel Ostroff, for the plaintiffs.

*William C. Chanler, Corporation Counsel [J. M. Evarts of counsel],* for the defendants.

COTILLO, J. The plaintiffs herein, eleven of the twenty-three persons designated as " assistant fire marshals," have brought this action for a declaratory judgment decreeing them to be members of the uniformed force of the New York city fire department, and as such entitled to retirement rights under section 790 of the Greater New York Charter, and to the refund of moneys heretofore paid by them into the New York City Employees' Retirement System. The parties have submitted their case upon the pleadings and an agreed statement of facts, the sole issue being one of statutory construction and interpretation.

It is conceded that the *chief fire marshal* and *deputy fire marshal,* whose appointment is provided for by section 779 of the Greater New York Charter, are by statute members of the uniformed force. There is no express statutory provision declaring or requiring any other fire marshals or assistant fire marshals to be members of the uniformed force of the department. Plaintiffs contend it is incongruous and illogical for the chief marshal and deputy chief marshal to be members of such force while assistants are not. An examination of the various enactments, and a consideration of their history, indicate that reasons exist for the distinction, which has long been recognized by everyone acting under the statute or affected thereby.

The earliest legislation now pertinent to the subject is found in chapter 563 of the Laws of 1868, although the office of fire marshal existed long prior to that date. The statute mentioned created the office of " Metropolitan Fire Marshal " in and for the metropolitan police district, to be appointed by the board of metropolitan police, with one assistant in Brooklyn. New York city and Brooklyn were then separate municipalities, but for a time comprised the so-called " Metropolitan Police District," " Metropolitan Fire District " and " Metropolitan Sanitary District," created by the Legis-

lature in an attempt to take control of these functions out of the hands of those then in charge of the city government. The statute expressly repealed all other provisions of law creating, authorizing or recognizing fire marshals in the cities included in metropolitan police district, and the word " marshal " as used therein was made applicable only to the "Metropolitan Fire Marshal."

Such fire marshal was required to take the constitutional oath of office and was given the assistance of two clerks to be appointed by the police board. He was charged with the duty of inquiring into the origin of fires in the district, taking testimony as to the causes thereof, and reporting thereon to the police board, and also to the district attorney, the fire department, and the board of underwriters. His salary was fixed at $5,000 per annum and that of his assistant at $2,500.

This statute, having expressly repealed all prior existing laws relating to the subject, may be regarded as the genesis of fire marshals as they now exist. The office as thus created was under the jurisdiction of the police department. The duties of the fire marshal did not embrace fire extinguishment or any functions relative to fire fighting, nor was he a member of the fire department. Aside from his Brooklyn " assistant " his aides were designated as clerks.

In 1870 the control of city affairs relating to police, fire and sanitation departments was returned to the separate municipalities, and the statutes creating the Metropolitan police and fire districts were, in so far as they affected the then city of New York, repealed by the revised charter enacted by chapter 137 of the Laws of 1870 (§ 120). That statute, as amended at the same session (Laws of 1870, chap. 383), created a new board of police to succeed the metropolitan police board, authorizing it to appoint *a fire marshal*, chief clerk and assistant clerk to have like powers, duties and compensation as those granted by the act of 1868. The Brooklyn assistant provided for by the latter act was, of course, eliminated, as that city was a separate municipality. The following year, however, an amendment to the New York city charter was enacted " for the better prevention of fires in the city of New York and to prescribe the powers and duties of the city fire marshal in relation thereto." (Laws of 1871, chap. 584.) Regulations were therein set forth relating to the use and storage of inflammable substances in this city. The fire marshal or his " officers and agents when authorized by him so to do " were empowered to inspect buildings and to report any dangerous or defective conditions to the police board. All provisions of the 1868 enactment, so far as applicable to New York city, were declared to be and remain in force. For the purpose of investigating the origin of fires and bringing to

punishment parties guilty of arson, the fire marshal was invested with the powers and jurisdiction conferred upon the superintendent of police by the Revised Statutes of 1859 (Part 1, chap. 20, title 22, § 9.)

The statute of 1871 authorized the police board to appoint " an assistant fire marshal, who shall possess all the powers and perform all the duties of the fire marshal in case of his absence or inability to act." It also authorized the police board to detail such patrolmen to the marshal's office as might be necessary to carry out the provisions of the act, but provided that the fire marshal, assistant marshal, chief clerk and assistant clerks should hold office during the pleasure of the police board.

Up to this time fire marshals were not members of nor connected in any manner with the fire department. In 1873 the laws relating to New York city were again revised by chapter 335. It was then that fire marshals were first placed under the jurisdiction of the fire department. Section 76 of that act directed that the fire department should have three bureaus, one headed by " the chief of department," to be charged with fire extinguishment and protection of property; another, headed by an " inspector of combustibles," to be charged with the execution of laws relating to combustibles; and the third charged with investigation of the origin and causes of fires, the principal officer of which was to be called " fire marshal." The latter was given all the powers and charged with all the duties of the fire marshal, appointed pursuant to chapter 383 of the Laws of 1870 and chapter 584 of the Laws of 1871, as amended. The appointment of such fire marshal and assistant fire marshal was vested in the board of fire commissioners, who were given all the powers with reference thereto conferred by the prior acts upon the police board, which included the right to appoint and remove at pleasure. Under other provisions of the 1873 revision, officers of the fire department and members of the uniformed force were removable only upon charges and after trial. While the fire marshal was placed under the jurisdiction of the fire department, the act neither constituted him a member of the uniformed force nor required him to be or become such.

The revision act of 1882 (Chap. 410) continued recognition of the office of fire marshal, but little is found therein to shed any light on the present controversy. The next legislation of importance was the Greater New York Charter of 1897 (Chap. 378), section 779 of which forms the connecting link between past and present enactments affecting fire marshals. By section 727 it was provided that one bureau of the fire department should be charged with the investigation of the origin and cause of fires, " the principal officers

of which shall be called ' fire marshals.' " Section 779 authorized the fire commissioners to appoint and remove one fire marshal for the boroughs of Manhattan, Bronx and Richmond, and one for Brooklyn and Queens, each to have all the powers theretofore conferred upon the fire marshal of the city of New York. The salary of each was fixed at $3,000. They were not specifically made or required to be members of the uniformed force. The members of that force were removable only upon charges and after trial, while fire marshals were appointed and removed at the pleasure of the commissioners. In *Matter of Roche* (141 App. Div. 872; affd., 203 N. Y. 610) the court held that the pilot of a city fire boat was not a member of the uniformed force until made so by express statutory provision, pointing out that had he entered the department as a fireman he would have remained a member of the uniformed force even though assigned as pilot, but not having done so, his status as a member of the uniformed force dated only from the enactment of a statute specifically so classifying pilots. The opinion points out the statutory enumeration of officers and members of the uniformed force which omits reference to pilots even as it fails to mention marshals. It follows that down to 1897 and thereafter until the amendment of 1901 (Chap. 466), fire marshals were not members of the uniformed force.

The charter revision of 1901 re-enacted section 779, authorizing the fire commissioner to appoint and remove a fire marshal for Manhattan, Bronx and Richmond, and a fire marshal to be seated in Brooklyn and to exercise his powers within the boroughs of Brooklyn and Queens. As so amended it contained the first reference to the uniformed force as follows: " Said * * * marshals shall * * * be members of the uniformed force of the fire department of the city of New York." The argument of counsel in the present case apparently proceeds on the theory that the provision just quoted constituted the persons appointed thereunder as city marshals to be members of the uniformed force. Counsel for defendants seek to limit its application, thus construed, to the appointees therein specifically mentioned and their successors under subsequent amendments, while plaintiff contends that this and subsequent legislation impliedly if not specifically constituted *all* fire marshals and assistant fire marshals members of the uniformed force. The more logical construction of the clause quoted above requires an interpretation that appointments to the office of city marshal could be made only from persons who were then members of the uniformed force.

Whatever the correct interpretation may be, it is certain that section 779, as amended in 1901, contemplated that the only fire

marshals who were made or required to be members of the uniformed force were the two marshals whose appointment was thereby authorized. This section, thus limited, remained in effect until 1917, when it was amended by chapter 604 of the laws of that year. Such amendment authorized the fire commissioner to create a bureau of fire investigation with headquarters in Manhattan and a branch office in Brooklyn, and to select and appoint *from the fire marshals now in office* a chief fire marshal and a deputy chief fire marshal. It is there provided that " *such chief and deputy fire marshals* shall continue to be members of the uniformed force of the fire department of the city of New York." This is the law now in force, unchanged by the amendment of 1934 (chap. 715), which divided former section 779 into two parts, leaving the portions above quoted from intact as present section 779.

Prior to 1917 only two fire marshals were specifically authorized by the city charter, and it is stipulated that at no time prior to that year were there more than two marshals in office. When the amendment of 1917 went into effect, Thomas P. Brophy and John P. Prial were the two fire marshals in office. Brophy was appointed chief fire marshal, and is still acting in that capacity. Prial was appointed deputy chief marshal, which position he occupied until his death in 1929. No appointment of a deputy chief marshal has since been made and the office remains vacant.

Brophy and Prial being the only fire marshals in office when the 1917 amendment took effect, they were the only fire marshals who were thereby continued as members of the uniformed force. This fact was apparently recognized at the time, for in 1919 a bill was passed by the Legislature making assistant fire marshals *then in office* members of the uniformed force. This bill was vetoed by the mayor, thereby vitiating the only legislation which attempted to widen the specific provisions of section 779 of the charter. All of the plaintiffs herein are assistant fire marshals. None of them were in office when the 1917 amendment took effect. The city budget describes them as assistant fire marshals and provides separately for their salaries and those of the chief fire marshal. Plaintiffs apparently have not heretofore regarded themselves as members of the uniformed force. They took different examinations than those required of uniformed firemen. Their salaries are not provided for in section 740, which fixes salaries of all officers and members of the uniformed force, but are fixed by city officials and have been accepted by plaintiffs without protest. They are subject to retirement by the board of estimate and their predecessors have accepted such retirement and the annuity provided for them by

the charter. The uniformed force is subject to entirely different retirement and pension provisions, and the distinction has long been recognized by city officials and former assistant fire marshals. Plaintiffs have for many years voluntarily contributed to the fund of the Employees' Retirement System. Uniformed firemen do not do so, having a separate pension fund.

The review of the history of fire marshals indicates quite clearly that the proper construction of the legislation affecting them requires a finding that these plaintiffs are not members of the uniformed force. The practical construction placed thereon by the municipal civil service commission in its grading of examinations, by the city officials in making up budgets, by the Legislature in its attempted legislation of 1919, and by plaintiffs themselves in voluntarily accepting salaries differing from those paid uniformed firemen and contributing therefrom for many years to the retirement fund, fully confirm the decision reached. Such practical construction by officials charged with the duty of administering the laws in question, by the Legislature, and by plaintiffs and their predecessors in office, is persuasive proof in support of the interpretation suggested by the history of the statutes. (*City of New York* v. *New York City R. Co.*, 193 N. Y. 543, 549.) As there pointed out by Judge VANN, " When the meaning of a statute is doubtful, a practical construction by those for whom the law was enacted, or by public officers whose duty it was to enforce it, acquiesced in by all for a long period of time  *  *  *  ' is entitled to great if not controlling influence.' " For many years assistant fire marshals have been considered as separate and distinct from the office of chief fire marshal. The latter is properly a member of the uniformed force under specific statutory enactments. There is no statutory provision in any wise connecting assistant fire marshals with the uniformed force. Plaintiffs are not entitled to the relief sought under the statutes as they now exist. Their sole remedy is by legislation, and their complaint must be dismissed upon the merits and judgment ordered for defendants.