In the Matter of WILLIAM B. OTIS et al., Petitioners, against BOARD OF HIGHER EDUCATION OF THE CITY OF NEW YORK, Respondent.

In the Matter of ROGER A. JOHNSON et al., Petitioners, against BOARD OF HIGHER EDUCATION OF THE CITY OF NEW YORK, Respondent.

In the Matter of JUSTIN H. MOORE et al., Petitioners, against BOARD OF HIGHER EDUCATION OF THE CITY OF NEW YORK, Respondent.

In the Matter of MARTIN MEYER, Petitioner, against BOARD OF HIGHER EDUCATION OF THE CITY OF NEW YORK, Respondent.

Supreme Court, Special Term, New York County, May 8, 1950.

*A. Mark Levien* for petitioners.

*John P. McGrath, Corporation Counsel (Michael A. Castaldi* and *Sidney P. Nadel* of counsel), for respondent.

EDER, J. The petitioner in this proceeding and in each of the three companion applications, full professors at the City College of the City of New York and at the Brooklyn College, contend that chapter 403 of the Laws of 1943, now section 3104 of the Education Law, and known as the " Moffat Law ", entitles them to the annual increments provided for full professors under said law, commencing as of January 1, 1944, and in consequence they are entitled to receive as six annual mandatory increments the following amounts: $100, $300, $300, $300, $250, $250, totaling $1,500, and they each seek an order pursuant to article 78 of the Civil Practice Act, requiring the defendant board of higher education of the city of New York to adjust their present salary by adding this sum thereto, and for back pay representing the difference between the salary paid them and their salary as augmented by the claimed increments.

The defendant contends that a proper construction of said chapter 403, considered in the light of the history and surroundings leading to its enactment, and the construction and

interpretation given it by petitioners and the defendant, and all the other professors, do not require or warrant the construction and interpretation claimed by petitioners.

For the reasons hereinafter stated I am led to the conviction that this is a correct view.

It appears from the record presented that the salary schedule for professors, and now in issue, was first established by the defendant on June 26, 1935, when it adopted new by-laws covering salary schedules and schedule conditions for all instructional and noninstructional positions under its jurisdiction. The uniform salary schedule established for professors provided for a minimum salary of $6,000, a maximum salary of $9,600, and a maximum mandated salary of $7,500.

It also appears that in all ranks where mandatory increments were provided for in the 1935 salary schedules and schedule conditions, the defendant followed a long-established practice of considering the minimum salary as the base upon which increments attached; that in the schedule for full professor, the defendant set up, as it did for other ranks, minimum and maximum salaries; that unlike other ranks, where full mandatory increments up to the maximum salary were intended, the salary schedule for full professor provided for mandatory increments only up to $7,500 per annum, with discretionary increments thereafter.

Attention is directed to the fact that the purpose of the 1935 schedules was to make professor salaries mandatory, but only up to $7,500, and that the schedule conditions, in part, provided the following: " C-9. Professor. * * * Professorial appointments at a salary above $7500. shall be made where the incumbent serves as head of department or where there are special reasons of scholarly distinction to warrant such appointment."

This plainly indicates that it was the purpose and intent of the defendant to establish a salary schedule for the position of full professors whereby their salary would not go beyond $7,500 per annum mandatorily; it appears, also, that the defendant's design in this connection was immediately put into practice; that on July 16, 1935, three weeks after the adoption of the new salary schedules defendant's executive committee held a meeting at which it adopted a resolution to fix the salaries of all instructional staff at the City College; effective January 1, 1936, which was the first effective date of increments under the new 1935 schedules.

It further appears that in the transfer of incumbents to the new schedule, mandatory increments were granted only where

they were earning less than $7,500. It is, in addition, shown, that the above procedure has been uniformly followed with respect to all the municipal colleges and that increments above $7,500 were always granted only as a matter of discretion in special cases.

In 1941 and 1942 certain provisions of the 1935 schedules which related to ranks other than professorial were declared invalid and as a consequence a very serious situation arose as a result of judgments and increment suits and existing claims which defendant was financially unable to meet; and which, unless remedied by legislation permitting existing by-law practices to continue, would prevent payment of increased salaries and necessitate substantial curtailment in services, staff reductions and inevitable dismissals.

Serious consideration was thereupon given to drafting and sponsoring legislation which would continue existing by-law practices. The Moffat Act was thereupon prepared and sponsored by defendant, and it is pointed out in this connection that it contains the identical salary schedule provisions as were contained in the original introduction of the bill, and it is the contention of defendant that the clear purpose and intent of the Moffat Act was to continue, by codification, the defendant's practices under its 1935 salary schedules; and it is further indicated by defendant that with respect to the professorial rank, the Moffat Act continued, *in haec verba,* the defendant's 1935 salary schedule for full professors.

The defendant sets forth that since the enactment of the Moffat Act the defendant board of higher education has continued the practice of granting mandatory increments to full professors only until they attained an annual salary of $7,500 and thereafter granted only discretionary increments; that this practice has been followed by the defendant since 1936 and has never been objected to or protested by any of the full professors or their representatives, and that, in fact, it has always been accepted by them as proper and in accordance with the language and purpose of the Moffat Act and its 1935 predecessor schedule.

In this regard, defendant sets forth that in May, 1935, the City College Chapter of the American Association of University Professors submitted a brief to defendant in support of its proposal to liberalize promotion opportunity and in the report of its executive committee, dated May 24, 1945, at page 2, there is contained the following in what is designated " Table

of the mandatory increments at the City College ", under the title " Prof: " — " Increments for the full professor between $7500. and $9600. are *permissive* and are now *rarely given* ". (Emphasis supplied.) At page 4 of the report, under the heading " Professors " — " Salary range: $6000.-$7500. in 6 mandatory increments, with *permissive* increments to $9600." (Emphasis added.)

It seems clear from this, as defendant urges, that the professors themselves have acknowledged the *permissive* character of increments beyond the $7,500 level.

The petitioners maintain, and, indeed, are proceeding on the theory that said chapter 403 established a new, separate, independent basis for the granting of the above-mentioned six enumerated mandatory increments to all professors, and petitioners argue that when the defendant's 1935 schedule for full professors was included in the 1943 Moffat bill that the Legislature intended that it should be treated as a newly adopted schedule as of March 1, 1943.

The argument is advanced by petitioners that in enacting said chapter 403 the Legislature intended to establish a " *new* salary schedule for full professors " to be applied prospectively to all the full professors in defendant's employ, without regard to the provisions of any of defendant's previous schedules for full professors except that the " *new* schedule " was not to operate to reduce the salary of any professor beyond what he was receiving on March 1, 1943.

This view is regarded as unpersuasive and its lack of persuasion is emphasized by petitioners' following admissions, as contained in the affidavit of their counsel wherein he states that " It is true that since the enactment of the Moffat Act the defendant has deemed the increments provided in the full professors' schedule mandatory only until the professor attained the annual salary of $7500., and permissive thereafter," and states, further: " It is also true that the full professors knew of defendant's practice and recognized it to be the fact and, until July 1948, when the notice of claim and demand in the first of these proceedings was served, they had not challenged the legality of defendant's practice  *  *  *."

Excuse is offered to offset this continued acquiescence by the statement that " like most teachers they had assumed that their employer, in this instance the defendant Board of Higher Education, knew the law and was complying with it according to its terms."

This is begging the question, hardly to be dignified by discussion. A similar excuse was offered and rejected in *Matter of De Wyrall* v. *McNamara* (198 Misc. 325).

Again, in alluding to the afore-mentioned table of mandatory increments at City College as set forth in the report of its executive committee, acknowledging that, as mentioned, increments about the salary level of $7,500 were permissive and had been so recognized by full professors, and without challenge or protest by them, petitioners' counsel, in attempted explanation, states: '' That table shows that the City College Chapter of the A. A. U. P. was aware of defendant's said practice, but it does not show that the Chapter accepted the practice as proper.''

This is not an explanation, but, rather, something in the nature of confession and attempted avoidance, warrants negligible consideration and is hardly conducive to persuasion.

It is finally argued by petitioners that four and a half years of continued acquiescence by the professors before challenging the correctness and legality of such practical construction by the parties is too short a period of time to be given any weight in the interpretation of this statute, and that, therefore, the canon of practical construction should not be here recognized. This premise is wholly destitute of merit.

It is a well-established rule that a practical construction which has received the acquiescence of the public and the officers charged with its enforcement, and of the persons affected thereby, and continued recognition, will be given considerable weight in the interpretation of a statute, and general usage, long continued, and theretofore unquestioned, has much the weight of judicial decision and is not to be lightly disregarded (*City of New York* v. *New York City Ry. Co.*, 193 N. Y. 543, 549; *Wildey* v. *McElligott*, 167 Misc. 101, 107). Four and a half years of unbroken, uninterrupted acquiescence in the practical construction of this statute by the petitioners, and by the other professors, and by the defendant, is a sufficiently long period of time, in my opinion, to hold the rule of practical construction applicable here and to hold the petitioners and others similarly situated estopped from now asserting defendant's construction and application of the said enactment are erroneous and illegal.

After careful examination of the statute, consideration of its history, and events preceding and leading to its enactment, the continuous and unchallenged construction, and the course of conduct pursued by defendant and acquiesced in by the petitioners and other full professors, as mentioned, and upon due

reflection, I have reached the ultimate conclusion that petitioners' claims and contentions are untenable.

It is my considered view that chapter 403 of the Laws of 1943, now section 3104 of the Education Law, is but an enactment *in haec verba* of the 1935 by-law salary schedule relating to professors; that the increments to full professors are mandatory up to the salary level of $7,500 per annum; that chapter 403 required the payment of the six enumerated increments only in the instance where a professor is appointed at the minimum annual salary of $6,000, and where a professor is appointed at a salary above $6,000, he is entitled to only so many of the increments as will elevate his annual salary to the level of $7,500, and that increments in the salary range between $7,500 and the maximum of $9,600 are permissive, and petitioners' claims to the converse are held to be lacking in legal stability.

It follows from the views here expressed and the conclusions reached that the application in each instance must be denied and the petition and proceeding in each case dismissed. Settle order on each motion.