Shanley N. Egeth, J.
Subdivision 1 of section 185 of the General Business Law reads in part as follows: “ The maximum fees provided for herein for all types of placement or employment may be charged to the job applicant and a similar fee may be charged to the employer.”
This motion by defendant to dismiss plaintiff’s complaint as legally insufficient raises an issue as to the meaning of the quoted statutory sentence in an ¿ction by an employment agency against an employer for a placement fee claimed to be due pursuant to an oral agreement.
*111 The parties hereto agree that the defendant hired an employee upon plaintiff’s recommendation. Said employee is classified as Class “ B ” in the statute (General Business Law, § 185, subd. 4). Subdivision 7 thereof fixes $728, as the maximum total fee chargeable for the placement of the $7,280 per annum employee.
Defendant claims that the employer may only be charged $364, and that any agreement which provides for an employer to pay a greater sum is violative of the statute, and void. Plaintiff contends that the statute does not preclude the employer from contracting to pay amount up to the combined total sum payable thereunder from an employer and employee. The defendant employer further contends that if an agreement for the total fee is found to exist, and if it is construed to be nonviolative of the statute, such oral agreement would in any event be barred by the Statute of Frauds (General Obligations Law, § 5-701, subd. 2).
No reported decision has been found construing section 185 of the General Business Law to determine whether or not an employer may make and be bound to an agreement to pay a placement fee which encompasses but does not exceed the statutory combined maximum for an employer and employee.
This court is compelled to construe the quoted statutory language to authorize an employer by valid agreement to become obligated to pay an employment agency placement fee which includes all or a portion of the fee chargeable to an employee, in addition to the maximum amount chargeable to the employer thereunder.
In so doing, defendant’s contention that such an agreement is illegal and void is rejected.
The rules of statutory construction and interpretation require this court to consider ‘ ‘ the mischief sought to be remedied by the legislation * * * to suppress the evil and advance the remedy ” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 95; Matter of Hamlin, 226 N. Y. 407). They further require “ a rational interpretation consistent with achieving [the statute’s general] purpose and [spirit] with justice and common sense.” (Statutes, § 96; Abood v. Hospital Amubulance Serv., 30 N Y 2d 295; Matter of New York Post Corp. v. Leibowitz, 2 NY 2d 677.) These construction rules additionally mandate that consideration must be given to the customs and usages prevalent at the time, and to its present applicability to customs and usages which were not then prevalent (Statutes, § 127; City of Poughkeepsie v. Town of Poughkeepsie, 52 Misc 2d 721, affd. 37 A D 2d 852; see Knapp v. Fasbender, 1 N Y 2d 212; Beers v. Hotchkiss *112 256 N. Y. 41). Ambiguities and lack of clarity in a statute are to be appropriately construed to avoid “ objectionable consequences,” so as not to cause “inconvenience”, “unreasonable [ness] ”, “ hardship or injustice ”, “ mischief ”, or “ absurdity ”, and in so doing, “ contemporaneous exposition * * * practicable construction which has received the acquiescence of the public * * * will * * * be given considerable weight in its interpretation.” (Statutes, §§ 128, 141,142,143 145,146,148; Holy Trinity Church v. United States, 143 U. S. 457; Williams v. Williams, 23 N Y 2d 592; Matter of Otis v. Board of Higher Educ. of City of N. Y., 199 Misc. 157, affd. 302 N. Y. 740; Metropolitan Life Ins. Co. v. Durkin, 301 N. Y. 376.)
This court is aware of the fact that present economic conditions and manpower shortages in many occupational areas have resulted in commonplace arrangements whereunder employers competing for needed help enter into agreements with employment agencies to assume the total fee burden of a placement. Such agreements free the applicant employee from any financial obligation for the placement, although the statute authorizes the exaction of placement charges from the employee.
The construction of the statute advocated by the defendant herein would require this court to invalidate any such agreements although today they appear to be more commonplace and customary than any other prevalent type of placement fee payment arrangement.
The effect of such a construction would result in absurdity, hardship, injustice, inconvenience and frustration of the original statutory purpose. It would inspire a host of devices, actions and agreements to circumvent its necessary impact. Such a construction would either cause the financial burden of one half of the authorized placement fee to be perpetually imposed upon the employee applicant who can least afford it, or alternatively, require or encourage utilization of subterfuges, legal fictions, indemnifications, cash transactions or superfluous agreements, to avoid a harsh or unfair result. It would engender a multiplicity of costly, unnecessary litigation (third-party beneficiary, or other) in order to circumvent a statutory prohibition, and thereby achieve a desirable socially and economically just objective.
This court is not required to construe this statute to create any of these absurd or unjust alternatives. The statutory provision was originally enacted to protect job applicants from overreaching and improper practices of employment agencies at a time *113 when victimization was quite common (see Acorn Employment Serv. v. Moss, 43 N. Y. S. 2d 379, affd. 266 App. Div. 829, revd. on other grounds 292 N. Y. 147; Abbye Employment Agency v. Robinson, 166 Misc. 820). The statutory purpose and spirit of protecting job applicants would be thwarted by a construction which' limits or prevents the validity of a contract providing them with additional protection. The widespread presently prevailing practices, customs and usages are different than those existing at the time of enactment, of the section, and these conditions, now widely acquiesced in, must be considered in making a present determination of proper legislative intent.
The horrendous consequences of a determination invalidating such agreements would undoubtedly create a clamor for a new statutory change to cure the problems and injustice engendered thereby.
It must also be considered that this statute regulating employment fees derogates the common-law right of employment agencies to freely contract for fees. With respect to limitations upon the ability of the agencies to charge, it must therefore be strictly construed (Statutes, § 302). Accordingly, in determining a question relating to a prior version of this particular statute, the Court of Appeals declared that it was to be strictly construed in favor of the agencies until the Legislature made a contrary direction (Faingnaert v. Moss, 295 N. Y. 18, 23).
This court will therefore attempt to harmonize the original legislative intent with presently accepted customs and usages, to avoid harsh, unjust, absurd results by construing this statute to authorize a valid agreement by an employer to obligate payment of a placement fee which encompasses all or part of the maximum chargeable to an employee, in addition to the maximum fee chargeable to the employer thereunder. Absent such an agreement the agency may only charge an employer a fee which does not exceed the statutory maximum chargeable to the employer.
Inasmuch as the agreement to pay the higher placement fee (although disputed by the employer), is claimed to be oral, consideration must now be given to the defendant’s argument that such an oral agreement is void because it is violative of the Statute of Frauds. Defendant contends that the claimed oral agreement obligated the' employer to pay the employee’s statutory fee obligation, and therefore constitutes 1 ‘ a special promise to answer for the debt, default or miscarriage of another person ” (General Obligations Law, § 5-701, subd. 2), and that it *114 is therefore void and unenforceable unless the agreement is in writing. This contention in unfounded.
The claimed agreement, which is the subject of this motion, is not an agreement to act as the employee’s surety respecting its obligation to pay a placement fee. In this case, the employee is not obligated to pay any placement fee. Although the statute authorizes the job applicant to be charged a fee, the agency never procured an agreement to so charge the employee. There is no primary obligation in existence from the applicant to the agency which gives the agency a right of action, or for which anyone may act as a surety.
This principle is clearly enunciated in section 349 of Corbin on Contracts. " A promise is not within this clause of the statute unless there is an obligation of some third person to the promisee, either already existing or subsequently existing. The third person must at some time be under a legal duty of performance to the promisee, a duty that will be discharged by the performance of the new promisor. ’ ’
(See, also, 2 Williston, Contracts [rev. ed], § 475; Restatement, Security, § 82, comments b, c, d; Kossick v. United Fruit Co., 166 F. Supp. 571, affd. 275 F. 2d 500, revd. on other grounds 365 U. S. 731; rehearing den. 366 U. S. 941; Eckstein v. Massachusetts Bonding & Ins. Co., 281 N. Y. 435; Richardson Press v. Albright, 224 N. Y. 497, Culkin v. Smith, 57 Misc 2d 901).
Inasmuch as there is no primary obligation upon the part of the employee, a promise of the employer to plaintiff is an original one, and there can be no surety relationship which becomes subject to the provisions of subdivision 2 of section 5-701 of the General Obligations Law.
Defendant’s motion to dismiss the complaint as insufficient in law is therefore in all respects denied.