Shanley N. Egeth, J.
Determination of the issues in this Small Claims Part case requires a present construction of the meaning of language contained in section 206 of the General Business Law as it applies to current widespread and commonplace practices and usages in the hotel and resort industry. Although the pertinent statutory provision has essentially been in effect since its original enactment ninety years ago (L. 1883, ch. 227, § 3), there appears to be no reported decision which directly construes or interprets its meaning and applicability.
THE STATUTORY LANGUAGE
The relevant portion of section 206 reads as follows :
“ No charge or sum shall be collected or received by any * * * hotel keeper or inn keeper for any service not actually rendered or for a longer time than the person so charged actually remained at such hotel or inn * * * provided such guest shall have given such hotel keeper or inn keeper notice at the office of his departure. For any violation of this section the offender shall forfeit to the injured party three times the amount so charged, and shall not be entitled to receive any money for meals, services, or time charged.”
THE BASIC ISSUE
Is a resort hotel which contracts with a guest for a minimum weekend or other fixed minimum period stay, in violation of section 206 of the General Business Law and subject to the liability provided therein, if it insists upon full payment from *917 a guest who checks out prior to the expiration of the contract period?
THE FACTS
Plaintiff, a lawyer, has commenced this action against the defendant, the operator of the Concord Hotel (Concord), one of the more opulent of the resort hotels in the Catskill Mountain resort area, to recover the sum of $424. Plaintiff seeks the return of charges paid at the rate of $84.80 per day for two days spent at the hotel ($169.60), plus three times said daily rate ($254.40) for a day charged, and not refunded after he and his wife checked out before the commencement of the third day of a reserved three-day Memorial Day weekend. Plaintiff asserts that he is entitled to this sum pursuant to the provisions of section 206 of the General Business Law.
The testimony adduced at trial reveals that, in early May, 1973, after seeing an advertisement in the New York Times indicating that Joel Gray would perform at the Concord during the forthcoming Memorial Day weekend, plaintiff contacted a travel agent and solicited a reservation for his wife and himself at the hotel. In response he received an offer of a reservation for a “ three night minimum stay ” which contained a request for a $20 deposit. He forwarded the money confirming the reservation, which was deposited by the defendant.
While driving to the hotel the plaintiff observed a billboard, located about 20 miles from his destination, which indicated that Joel Gray would perform at the Concord only on the Sunday of the holiday weekend. The plaintiff was disturbed because he had understood the advertisement to mean that the entertainer would be performing on each day of the weekend. He checked into the hotel notwithstanding this disconcerting information, claiming that he did not wish to turn back and ruin a long-anticipated weekend vacation. The plaintiff later discovered that two subsequent New York Times advertisements, not seen by him before checking in, specified that Gray would perform on the Sunday of that weekend.
After staying at the hotel for two days, the plaintiff advised the management that he wished to check out because of his dissatisfaction with the entertainment. He claims to have told them that he had made his reservation in reliance upon what he understood to be a representation in the advertisement to the effect that Joel Gray would perform throughout the holiday weekend. The management suggested that, since Gray was to perform that evening, he should remain. The plaintiff refused and again asserted his claim that the advertisement constituted *918 a misrepresentation. The defendant insisted upon full payment for the entire three-day guaranteed weekend in accordance with the reservation. Plaintiff then told the defendant’s employees that he was an attorney and that they had no right to charge him for the third day of the reserved period if he checked out. He referred them to the text of section 206 of the General Business Law, which he had obviously read in his room where it was posted on the door, along with certain other statutory provisions and the schedule of rates and charges. The plaintiff was finally offered a one-day credit for a future stay, if he made full payment. He refused, paid the full charges under protest, and advised the defendant of his intention to sue them for treble damages. This is that action.
SUBSIDIARY ISSUE-THE CLAIMED MISREPRESENTATION
I find that the advertisement relied upon by the plaintiff did not contain a false representation. It announced that Joel Gray would perform at the hotel during the Memorial Day weekend. Gray did actually appear during that weekend. The dubious nature of the plaintiff’s claim is demonstrated by the fact that when he checked in at the hotel he had been made aware of the date of Gray’s performance and remained at the hotel for two days and then checked out prior to the performance that he had allegedly traveled to see.
The advertisement contained no false statement. Tt neither represented nor suggested that Gray would perform throughout the holiday weekend. The defendant cannot be found liable because the plaintiff misunderstood its advertisement (Channel Master Corp. v. Aluminium Ltd. Sales, 4 N Y 2d 403; Sabo v. Delman, 3 N Y 2d 155; First Nat. Bank of Hempstead v. Level Club, 254 App. Div. 255, affd. 282 N. Y. 577).
THE CLAIMED VIOLATION OP SECTION 206
We now reach plaintiff’s primary contention. Simply put, plaintiff asserts that by requiring him to pay the daily rate for the third day of the holiday weekend (even though he had given notice of his intention to leave and did not remain for that day), thé defendant violated the provisions of section 206 of the General Business Law and thereby became liable for the moneys recoverable thereunder. Plaintiff contends that the language of the statute is clear, and that under its terms he is entitled to the relief sought irrespective of whether he had a fixed weekend, week, or monthly reservation, or even if the hotel services were available to him.
*919 It must be noted at the outset that the plaintiff checked into the defendant’s hotel pursuant to a valid, enforceable contract for a three-day stay. The solicitation of a reservation, the making of a reservation by the transmittal of a deposit and the acceptance of the deposit constituted a binding contract in accordance with traditional contract principles of offer and acceptance. Unquestionably, the defendant would have been liable to the plaintiff had it not had an accommodation for plaintiff upon his arrival. The plaintiff is equally bound under the contract for the agreed minimum period.
The testimony reveals that the defendant was ready, willing, and able to provide all of the services contracted for, but that plaintiff refused to accept them for the third day of the three-day contract period. These services included lodging, meals, and the use of the defendant’s recreational and entertainment facilities. In essence, plaintiff maintains that under the terms of the statute, his refusal, for any reason, to accept or utilize these facilities for part of the contract period precludes the defendant from charging him the contract price.
Section 206 is silent as to its applicability to circumstances which constitute a breach of contract or a conscious refusal to accept offered services. This is one of those instances in which, upon analysis, a statute which appears to be clear and unambiguous is sought tó be applied to a situation not envisioned by its framers. Nothing contained in the statute provides assistance in answering the question presented in this case, i.e., may a resort hotel hold a guest to his contract for a stay of fixed duration when that guest has, without cause, breached his contract.
There is no legislative history available to assist in determining the intention of the Legislature, nor are there any reported decisions construing the statute which can be of assistance in this regard. Recourse must therefore be had to general principles of statutory construction.
Plaintiff argues that section 206 must be strictly construed against the hotel. In support of this position he cites a number of decisions construing sections 201 and 202 of the General Business Law. These cases all deal with construction of the statutory right of hotels to limit their monetary liability for the loss of a guest’s property. They are inapplicable to the instant situation. The statutory right of a hotel to limit its liability to its guests is in derogation of its unlimited prestatutory common-law liability.
The decisions thereunder universally and appropriately mandate a strict construction of the statutes. However, this case *920 presents the converse situation. Section 206 limits the prior common-law unlimited right of a hotel to contract to charge its guests for services and facilities. The statutory restriction upon the hotel is in derogation of the common law. Such a statute must be strictly construed in favor of the hotel and against any expansion of the restriction of its common-law right. (See Transit Comm. v. Long Is. R. R. Co., 253 N. Y. 345; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 311; cf. Faingnaert v. Moss, 295 N. Y. 18, 23, construing section 185 of the General Business Law.)
The requirement of strict construction in favor of the hotel is buttressed by the penal-like treble damage penalty contained in the statute. A statute which is quasi-penal in nature should be strictly construed against the extension of its application to areas not expressly mandated or contemplated by the Legislature. (See Osborne v. International Ry. Co., 226 N. Y. 421; McKinney’s Statutes, §§ 271, 275.)
It is not sufficient to merely conclude that the statute must be strictly construed in favor of the hotel. The construction to be accorded the statute must also harmonize with the other general principles which have evolved to assist courts in arriving at a determination of legislative intent. Consideration must be given to the “ mischief sought to be remedied by the new legislation ”, (Matter of Hamlin, 226 N. Y. 407; McKinney’s Statutes, § 95.)
Statutory construction must be sought which is “ consistent with achieving [the statute’s] purpose and with justice and common sense.” (McKinney’s Statutes, § 96; see Abood v. Hosp. Ambulance Serv., 30 N Y 2d 295; Matter of New York Post Corp. v. Liebowitz, 2 N Y 2d 677.) Consideration must be given to the customs, usages and history prevalent at the time of enactment, to present customs and usages not then prevalent (City of Poughkeepsie v. Town of Poughkeepsie, 52 Misc 2d 721, affd. 37 A D 2d 852; see Knapp v. Fasbender, 1 N Y 2d 212; Beers v. Hotchkiss, 256 N. Y. 41; McKinney’s Statutes, §§ 123, 127), and to the avoidance of “ objectionable consequences ”, “ inconvenience ”, ‘1 hardship or injustice ”, “mischief”, or “ absurdity ”. (McKinney’s Statutes, §§ 141, 142, 145, 146, 148.)
Contemporaneous exposition ‘ ‘ practical construction which has received the acquiescence of the public * * * will * * * be given considerable weight ” (McKinney’s Statutes, § 128; see Holy Trinity Church v. United States, 143 U. S. 457; Williams v. Williams, 23 N Y 2d 592; Matter of Otis v. Board of Higher *921 Educ. of N. Y. City (199 Misc. 157, affd. 302 N. Y. 740; Metropolitan Life Ins. Co. v. Durkin, 301 N. Y. 376).
In 1883, the year of statutory enactment, transportation in our Nation was slow and limited. Few persons traveled great distances for the sole purpose of recreation and pleasure. Small inns proliferated the countryside, frequented by travelers requiring rest and sustenance during the course of long and arduous journeys. Such travelers might briefly stay at a convenient inn along their route, refresh themselves, and continue on to their destination. Too often, they had limited choices en route and frequently the traveler would be easy prey to unscrupulous innkeepers, who might exact unreasonable charges and enforce collection via a friendly constable and utilization of the innkeepers’ lien.
Section 206 was enacted to provide some protection against such exploitation.
The automobile, fast trains, and air transportation, a developing affluent and mobile society in which an increasing number of people began to seek diversion and recreational regeneration in utilizing their expanded leisure time have resulted in a total transformation of the nature of modern hotels.
A vast hotel and recreation industry has since developed to meet the expanding needs of our citizenry. Major resort complexes were created to cater to various recreation inclinations. Our countryside is presently dotted with countless enterprises ranging from the simple and primitive campsite or bungalow to the most luxurious and opulent hotel, providing a quality of accommodation, food and recreational facilities unavailable to even the very rich of 90 years ago. All of these enterprises compete for public patronage. Even the most expensive are frequented by persons of modest means who find they can afford to indulge themselves for period of limited duration.
In most instances the industry is seasonal in nature. Its facilities are most sought during vacation and holiday periods. Hotels such as the one operated by the defendant have developed techniques to provide full utilization of their facilities during periods of peak demand. One such method is the guarantee^ minimum one week or weekend stay, which has gained widespread public acceptance. Almost all of these enterprises have offered their facilities for minimum guaranteed periods during certain times of the year by contracting with willing guests who also seek to fully utilize their available vacation time. These minimum period agreements have become essential to the economic survival and well-being of the recreational hotel indus *922 try. The public is generally aware of the necessity for them to do so, and accepts the practice.
Adoption of plaintiff’s statutory construction in this case would have far-reaching consequences with impact well beyond this case or this defendant. Changes during the past 90 years have transformed the conditions, which required urgent redress by statutory enactment in 1883, into a rarity in the year 1973. Absurd results would follow were the statute to be literally and strictly construed in the manner urged by plaintiff. The statute could then become an instrumentality for the infliction of grave harm and injustice, rather than a buffer or shield against the activities of rapacious hotelmen. Plaintiff’s construction would create the anomaly of rendering a proper contract illusory while unjustly continuing to obligate only one of the parties to the performance of the contract. The defendant, and most similarly situated hotel keepers have utilized their minimum reservation contracts as a means of achieving economic survival. Chaos and financial disaster would result from the invalidation of such agreements.
A hotel such as the defendant’s services thousands of guests at a single time. The maintenance of its facilities entails a continuing large overhead expenditure. It must have some means to legitimately ensure itself the income which its guests have contracted to pay for the use of its facilities. The minimnm period reservation contract is such a device. The rooms are contracted for in advance and are held available while other potential guests are turned away. A guest who terminates his contractual obligations prior to the expiration of the contract period will usually deprive the hotel of anticipated income, if that guest cannot be held financially accountable upon his contract. At that point, replacement income is virtually impossible. Indeed, on occasion, some hotels contract out their entire facilities to members of a single group for a stipulated period many months in advance. No great imagination is required to comprehend the economic catastrophe which would ensue if all such guests were to cancel at the last minute or to check out prior to the end of their contract period without continuing contractual liability. I cannot believe that the public policy of the State sanctions such contractual obliteration.
The construction sought by the plaintiff could result in other consequences which are equally bizarre. The defendant has contracted to supply the plaintiff with a room, three meals a day, and access to the use of its varied sports, recreational or entertainment facilities. As long as these are available to the plaintiff the defendant has fulfilled its contractual commitment. *923 If the plaintiff’s construction of the statute is tenable, he might also argue with equal force that unless a guest receives an appropriate rebate or adjustment of bill, the defendant would incur statutory liability, if such guest visited a friend in the vicinity, slept over and failed to use his room for one or more nights of his contracted stay; became enmeshed in an all-night game of cards and failed to use his room; was dieting and failed to avail himself of all the offered meals; did not play tennis, golf, or swim, or became sick and made no use of the available recreational or entertainment facilities.
I conclude that plaintiff may not recover because he has not proved a cause of action based upon a violation of section 206 of the General Business Law. The evidence does not prove the existence of the type of wrong for which redress was provided in the 1883 enactment. The statute was not intended to prevent a hotel from insisting that its guests comply with the terms of a contract for a fixed minimum stay. There can be no statutory violation by a hotel which fulfills its part of the contract by making its services and facilities available to a guest who refuses to accept them. Such act of refusal by the guest does not justify imposition of the penalties set forth in the statute.
Judgment is accordingly awarded to the defendant, with costs.