**2625 BUILDING CORPORATION d/b/a the Marott Hotel, Appellant (Defendant Below),**

v.

**Richard E. DEUTSCH, Appellee (Plaintiff Below).**

**No. 2–277A41.**

Court of Appeals of Indiana, Fourth District.

Feb. 21, 1979.

Robert A. Claycombe and Heather M. Wiske of Kothe, Shotwell, Claycombe, Hendrickson & Kortepeter, Indianapolis, for appellant.

H. Andrew Sonneborn of Bamberger & Feibleman, Indianapolis, for appellee.

MILLER, Judge.

This is an appeal by Defendant, 2625 Building Corporation, d/b/a The Marott Hotel (Marott), from a judgment for the Plaintiff (Deutsch) granting recovery of his advance payment for hotel rooms which were reserved for the 1973 Indianapolis "500" Mile Race weekend but were not used.

A summary of the facts shows that on December 7, 1972, Deutsch, a resident of Connecticut, made reservations by telephone for six rooms at the Marott for the 1973 "500" Mile Race weekend (May 27, 28, 29). Marott requested advance payment for the rooms. Deutsch complied with Marott's demand and paid by check in the amount of $1,008.00 in full for the reserved rooms. At the end of March, or the beginning of April, 1973, Deutsch, by telephone, cancelled the reservations and requested the return of his advance payment. Marott refused his demand. Deutsch did not use the rooms and later brought action against Marott to recover the $1,008.00 advance payment alleging the above facts and, in addition, that Marott had relet the rooms and was not harmed by the cancellation.

At trial before the court, after Deutsch presented his evidence and rested, Marott moved for dismissal on the ground that Deutsch had failed to present evidence in support of his allegation that Marott had relet the rooms and was not harmed, and, therefore, had failed to establish a *prima facie* case. The judge took the motion under advisement, reserving his ruling until the conclusion of all the evidence. Marott presented no evidence and rested. The judge then took the entire matter under advisement and, about 30 days later, entered the following judgment in favor of Deutsch and against Marott:

"This cause having been taken under advisement at the close of the Plaintiff's evidence; the Defendant having made a motion for involuntary dismissal, which the Court took under advisement; and the Defendant then resting its case with-

out the presentation of evidence; and the Court now being duly advised finds as follows:

"The Court deems the Plaintiff's complaint amended to conform to the evidence. The contract between the parties was an oral special contract which was cancelled by the Plaintiff before the date to be performed by the Defendant. Therefore, it is in the nature of an executory contract which was never performed. The Plaintiff is, therefore, entitled to the recovery of his deposit less any actual damages suffered by the Defendant. (The Defendant having failed to show any actual damages, the Plaintiff is entitled to recover the entire deposit.) To allow the Defendant to retain the entire amount would constitute a penalty which the law abhors and would unjustly enrich the Defendant. (195 Ind. 503 [144 N.E. 881]) The Plaintiff has failed to prove the date of the original demand for return of the deposit and therefore interest will be allowed from the filing of this lawsuit, which also constitutes a demand.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Plaintiff recover from the Defendant the sum of One Thousand and Eight Dollars ($1,008.00). with interest at eight per-cent (8%) from January 3, 1974.

"IT IS FURTHER ORDERED that the Defendant's motion for involuntary dismissal be and is hereby overruled.

"Costs of this action are assessed against the Defendant."

On appeal Marott argues that the decision of the trial court was not sustained by sufficient evidence, that the decision of the trial court was contrary to law in that the court found the contract between the parties to be an executory contract and to contain a provision for a penalty upon cancellation, and that the trial court abused its discretion in deeming Deutsch's complaint amended to conform to the evidence without a request from Deutsch and without any indication of the court's intention to do so before he entered judgment.

We affirm.

■ Initially we examine Marott's contention that the court erred in finding the room reservation to be an oral special contract which was executory in nature and which contained a provision for a penalty upon cancellation. In absence, Marott argues that the contract was fully executed at the time Deutsch tendered his advance payment for the reservations and thereafter it was obligated to hold the rooms open and available for Deutsch on the dates reserved. Hence, Marott argues it was not required to refund Deutsch's advance payment when the reservations were cancelled.

An executory contract is defined in 17 Am.Jur.2d, *Contracts*, § 6, p. 341, as follows:

"*An executory contract is one in which a party binds himself to do or not to do a particular thing, whereas an executed contract is one in which the object of the agreement is performed and everything that was to be done is done.* The distinction would seem to relate to the legal effect of a contract at two different stages. An executory contract, it is said, conveys a chose in action, while an executed contract conveys a chose in possession." (emphasis added)

Contrary to Marott's contention, the contract was not fully executed at the time the reservations were cancelled. Under the facts of this case the contract was executory in nature, part of which had been executed when Deutsch cancelled his reservations. That is to say, the portion of the contract pertaining to Deutsch's tender of payment in full and Marott's acceptance of said payment was an executed portion of the contract and the obligation of Marott to provide its facilities for Deutsch's use remained executory until Deutsch's cancellation. Marott's further contention that it was obligated to keep the rooms available for Deutsch after he cancelled his reservations is also without merit. Deutsch's repudiation of the contract was an anticipatory breach thereof which relieved Marott from its future obligations and enabled it, if it desired, to sue at that time for damages caused by such breach. 6 I.L.E. *Contracts,*

§ 232; *See also*, Squillante, *Anticipatory Repudiation and Retraction*, 7 Valparaiso L.J. 373 (1973).

We next examine Marott's claim that the evidence did not support the trial court's conclusion that full payment for the rooms constituted a penalty. The general nature of an agreement for hotel reservations was recently defined in *Freeman v. Kiamesha Concord, Inc.* (1974), 76 Misc.2d 915, 351 N.Y.S.2d 541, as follows:

"The solicitation of a reservation, the making of a reservation by the transmittal of a deposit and the acceptance of the deposit constituted a binding contract in accordance with traditional contract principles of offer and acceptance."

In *Freeman, supra*, the guest paid the hotel a $20.00 deposit in advance for a three day reservation, used the hotel's facilities for two days but refused to use them on the third day because of his dissatisfaction with the entertainment. The hotel insisted upon full payment for the three days in accordance with the reservation. The guest paid under protest and sued to recover for the amount paid for the unused portion of the reserved period. The Civil Court of the City of New York denied recovery stating:

"A hotel . . . services thousands of guests at a single time. The maintenance of its facilities entails a continuing large overhead expenditure. It must have some means to legitimately ensure itself the income which its guests have contracted to pay for the use of its facilities. The minimum period reservation contract is such a device. The rooms are contracted for in advance and are held available while other potential guests are turned away. A guest who terminates his contractual obligations prior to the expiration of the contract period will usually deprive the hotel of anticipated income, if the guest cannot be held financially accountable upon his contract. At that point, replacement income is virtually impossible. . . . No great imagination is required to comprehend the economic catastrophe which would ensue if all such guests were to cancel at the last minute or to check out prior to the end of their contract period without continuing contractual liability."

The Marott cites this decision in support of its proposition that it had a right to refuse to refund $1,008.00 to Deutsch when he cancelled his reservations. However, we find the facts in the case at hand to be clearly distinguishable. In *Freeman* the guest had checked into the hotel pursuant to the contract whereas in this case Deutsch had not. Moreover, *Freeman* involved a "last minute" check-out prior to the end of the contract period, whereas Deutsch gave the Marott approximately two months advance notice of his cancellation.

We do not disagree with the reasoning in *Freeman* as applied to the facts therein and such reasoning is certainly applicable in "last minute" cancellation cases, especially at resort type hotels. Thus, we recognize there may be instances when a guest's cancellation of reservations would not justify a refund of an advance payment. As noted previously, the making and acceptance of the reservation in this case constituted a binding contract. Upon Deutsch's breach Marott was entitled to *actual damages* in accordance with traditional contract principles. *French v. Cunningham* (1898), 149 Ind. 632, 49 N.E. 797; *Jeffries v. Lesh* (1924), 195 Ind. 503, 144 N.E. 881. However, we agree with the trial court that to allow Marott to retain damages representing payment for use of all the rooms, regardless of the fact that damages could be ascertained, would be to enforce a penalty or forfeiture. *Czeck v. Van Helsland* (1968), 143 Ind.App. 460, 241 N.E.2d 272. To hold otherwise under the facts and circumstances of this case would be inconsistent "with the principles of fairness and justice under the law" as set down in *Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641, in which our Supreme Court stated:

"Forfeitures are generally disfavored by the law. *Carr v. Troutman* (1954), 125 Ind.App. 151, 123 N.E.2d 243. In fact, '. . . [e]quity abhors forfeitures and beyond any question has jurisdiction,

which it will exercise in a proper case to grant relief against their enforcement.' 30 C.J.S. Equity § 56 (1965) and cases cited therein. This jurisdiction of equity to intercede is predicated upon the fact that 'the loss or injury occasioned by the default must be susceptible of exact compensation.' 30 C.J.S., *supra*.

"Pomeroy defines this doctrine of equitable interference to relieve against penalties and forfeitures as follows:

'Wherever a penalty or a forfeiture *is used merely to secure the payment of a debt*, or the performance of some act, or the enjoyment of some right or benefit, equity, considering the payment, or performance, or enjoyment to be the real thing intended by the agreement, and the penalty or forfeiture to be only an accessory, will relieve against such penalty or forfeiture by awarding compensation instead thereof, proportionate to the damages actually resulting from the non-payment, or non-performance, or non-enjoyment, according to the stipulations of the agreement. The test which determines whether equity will or will not interfere in such cases *is the fact whether compensation can or cannot be adequately made for a breach of the obligation which is thus secured. If the penalty is to secure the mere payment of money, compensation can always be made, and a court of equity will relieve the debtor party upon his paying the principal and interest .  .*

'[The granting of relief in such circumstances is based on the ground that it is wholly against conscience to say that because a man has stipulated for a penalty in case of his omission to do a particular act—*the real object of the parties being the performance of the act*—if he omits to do the act, he shall suffer a loss which is *wholly disproportionate to the injury sustained by the other party*.]' Pomeroy, Equity Jurisprudence, § 433, 5th Edition (1941). (Emphasis added.)

"*  *  *  If the damages are unreasonable, i. e., if they are disproportionate to the loss actually suffered, they must be characterized as penal rather than compensatory. See *Melfi v. Griscer Industries, Inc.* (1967), 141 Ind.App. 607, 231 N.E.2d 54; *Czeck v. Van Helsland* (1968), 143 Ind.App. 460, 241 N.E.2d 272."

The evidence in the record reveals that Deutsch made reservations, tendered full payment for the use of the rooms in advance and, approximately two months prior to Marott's time for performance, cancelled the reservations and demanded refund, which demand was refused. In addition, we take judicial notice that the Indianapolis "500" Mile Race has the largest attendance of any single, one-day, arena-type sporting event in the world. The influx of dedicated racing fans to the Indianapolis metropolitan area in order to witness this spectacle of racing is legend. Attendant with this influx is the overwhelming demand for and shortage of hotel accommodations.[1]

Therefore, we find that the facts of this case justified the trial court's conclusion that assessing Deutsch for the full amount of his room payments would cause him to suffer a loss which was wholly disproportionate to any injury sustained by Marott. Since there was no evidence that Marott sustained any damage, we cannot say, as a matter of law, that the trial court erred in allowing Deutsch full refund of his money.

▇▇▇ Lastly, we examine Marott's contention that the trial court abused its discretion by finding Deutsch's complaint was amended to conform to the evidence allegedly without a request from Deutsch or any indication by the trial court of its intention to do so before judgment was entered. After Deutsch rested his case Marott moved for a finding in its favor based on Deutsch's failure to prove an essential element of the theory of unjust enrichment. In response,

1. Marott agrees. In its memorandum in support of its Motion to Correct Errors, Marott stated "Mr. Deutsch did receive a valuable right for his money. He had the right to several hotel rooms on the Memorial Day weekend in Indianapolis, Indiana, when as this Court must know every hotel room in the City of Indianapolis is usually filled with persons attending the 500 Mile Race."

Deutsch's counsel acknowledged his failure to prove Marott had relet the rooms and that such proof was an essential element of his unjust enrichment theory. However, he asserted that this element was not essential to his penalty theory and pointed out that he had indicated earlier in his opening statement that he was proceeding under both the theory of unjust enrichment and that of a purported penalty. He then urged the court to accept his penalty theory relying on several Indiana cases, one of which was later relied upon by the trial court in its judgment.[2]

Ind. Rules of Procedure, Trial Rule 15(B), which authorizes the amendment of pleadings to conform to the evidence, provides as follows:

"(B) Amendments to conform to the evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

Assuming arguendo that it was necessary for the trial court to find the complaint amended by the evidence,[3] such amendment was justified by the evidence at trial. It

was recently stated in *Urbanational Developers, Inc. v. Shamrock Engineering* (1978), Ind.App., 372 N.E.2d 742, at 751:

"The rationale underlying Trial Rule 15(B), *supra*, is to promote relief for a party based upon the evidence actually forthcoming at trial, notwithstanding the initial direction set by the pleadings. *Ayr-Way Stores, Inc., et al. v. Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335."

\* \* \* \* \* \*

"In interpreting the Federal Rules of Procedure, Fed.R.Civ.P., 15(b), which is identical to Trial Rule 15(B), it has been held to be error to deny a proper request for an amendment to conform to the evidence. 3 Moore's Federal Practice, ¶ 15.-13[2], at 989–991. *See also*, 2 Harvey, Ind.Pract.—Rules of Civ.Proc., *Civil Code Study Commission Comments*—Rule 15(b), at 122 (1970)." *See also, Puckett v. McKinney* (1978), Ind.App., 373 N.E.2d 909; *Homemakers Finance Service, Inc. v. Ellsworth* (1978), Ind.App., 380 N.E.2d 1285; *Yeager and Sullivan, Inc. v. O'Neill* (1975), 163 Ind.App. 466, 324 N.E.2d 846; *Indpls. Transit v. Williams, etc.* (1971), 148 Ind.App. 649, 269 N.E.2d 543.

Deutsch in his opening statement indicated he was proceeding on two theories and, at the close of his evidence, he informed the court that he was proceeding only on the penalty theory. It was then evident that Deutsch, in effect, was requesting the trial court, if necessary, to amend the pleadings to conform to the evidence. Thus, we find Marott's contention that the trial court acted without a request from Deutsch to be without merit.

Merott's further contention that the trial judge entered judgment without any indication that he might make a finding which amended the pleadings to conform to the evidence is also without substance. When the trial court took under advisement Marott's motion for a finding in its favor it

---

**2.** *Jeffries v. Lesh, supra.*

**3.** Ind.Rules of Procedure, Trial Rule 8(E)(2) permits two statements of a claim to be set

forth in one count of a pleading. Deutsch claimed both his theories of recovery were present in his complaint.

could only have done so in order to consider Deutsch's remaining penalty theory as Deutsch had abandoned his only other theory of recovery. At that point in the trial Marott rested without presenting any evidence nor did it move for a continuance for any reason, including surprise. We, therefore, must conclude that Marott had notice both of Deutsch's theory of the case and the evidence in support thereof and, further, of the court's intention to consider that theory in arriving at its final judgment. Marott elected to stand on the evidence as presented and has failed to show this Court how it was prejudiced by the action of the trial court or that said court in any way abused its discretion.

Judgment affirmed.

CHIPMAN, P. J., and YOUNG, J., concur.