ATTORNEYS FOR PETITIONER:
**HOWARD E. KOCHELL**
**RANDAL J. KALTENMARK**
**ZIAADDIN MOLLABASHY**
BARNES & THORNBURG LLP
Indianapolis, IN

**ELIZABETH B. HERRINGTON**
**CATHERINE A. BATTIN**
**MEGAN THIBERT-IND**
**JEFFERY A. ROSSMAN**
MCDERMOTT WILL & EMERY LLP
Chicago, IL

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**JESSICA R. GASTINEAU**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN



FILED

Dec 20 2016, 12:59 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

| | |
|---|---|
| ORBITZ, LLC, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Cause No. 49T10-0903-TA-00010 |
| | ) |
| INDIANA DEPARTMENT OF STATE REVENUE, | ) |
| | ) |
| Respondent. | ) |

## ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

**FOR PUBLICATION**
**December 20, 2016**

WENTWORTH, J.

Orbitz, LLC challenges the Indiana Department of State Revenue's assessments of Indiana sales and innkeeper's taxes for the January 1, 2004, through December 31, 2006, period (the "period at issue"). The matter is currently before the Court on the

parties' cross-motions for summary judgment.[1]  The Court restates the dispositive issue as whether the Department erred in issuing sales and innkeeper's tax assessments against Orbitz based on the retail rather than the wholesale rate of Indiana hotel rooms.[2]  The Court finds in favor of Orbitz.

## FACTS AND PROCEDURAL HISTORY

Orbitz is an online travel company headquartered in Chicago, Illinois that provides a variety of travel-related services and information to customers through its Orbitz.com website.  (Pet'r & Resp't Jt. Stip. Facts ("Jt. Stip.") ¶¶ 1-2, 30.)  For instance, customers may use the Orbitz website to search for, compare, and ultimately reserve airline tickets, car rentals, lodging, or a variety of other travel products.  (See Jt. Stip. ¶¶ 1, 30, 32.)

During the period at issue, one of the Orbitz regional market managers traveled to Indiana to cultivate relationships with hoteliers.  (See Jt. Stip. ¶¶ 6-9.)  The regional market manager and the hoteliers subsequently executed contracts that allowed Orbitz to provide its services for several Indiana hotels in Allen, Clark, Floyd, Harrison, Jefferson, Marion, Scott, and Shelby Counties (the "Hotel Listing Agreements").  (See Jt. Stip. ¶¶ 10, 19-23, Ex. 1.)

---

[1]  The parties have designated evidence that contains confidential information.  Accordingly, the Court will provide only that information necessary for the reader to understand its disposition of the issues presented.  See generally Ind. Administrative Rule 9.

[2]  Orbitz also has claimed that the equitable estoppel doctrine, the Internet Tax Freedom Act, and the Commerce, Equal Protection, and Due Process Clauses of the United States Constitution precluded the Department's assessments for the period at issue.  (See Pet'r Mem. Supp. Pet'r Mot. Summ. J. ("Pet'r Mem.") at 29-43.)  The Court, however, does not address these additional claims because it has found in favor of Orbitz on other grounds.  See, e.g., Bethlehem Steel Corp. v. Indiana Dep't of State Revenue, 597 N.E.2d 1327, 1330 (Ind. Tax Ct. 1992), aff'd by 639 N.E.2d 264 (Ind. 1994) (providing that when cases are resolved on statutory grounds, the Court need not address constitutional claims).

According to the terms of the Hotel Listing Agreements, the hoteliers delegated to Orbitz some of their day-to-day responsibilities, including certain marketing, tax collecting, payment processing, reservation, and customer service functions. (See Jt. Stip., Ex. 1 ¶¶ 5-7.) The hoteliers also established wholesale rates for the hotel rooms, agreed not to disclose the wholesale rates to the public, and agreed to allow Orbitz to charge customers at rates greater than the wholesale rates when it facilitated pre-paid reservations. (See Jt. Stip., Ex. 1 ¶ 5(a).) Orbitz, in turn, agreed to promote the Indiana hotels on its website, to facilitate pre-paid reservations for the hotels through its secure private communications network (the "extranet"), and to collect sales and innkeeper's taxes from customers based on the wholesale rate of the hotel rooms alone (i.e., the "tax recovery charge"). (See Jt. Stip., Ex. 1 ¶¶ 2, 5(a).)

Orbitz, like other third-party travel intermediaries, used the "merchant model" to facilitate the pre-paid reservations.[3] (See Jt. Stip. ¶ 33.) Consequently, Orbitz's facilitation of pre-paid reservations typically involved several, nearly simultaneous, integrated steps:

1) Orbitz advertised Indiana hotels on its website; after the customer selected a room to reserve and agreed to certain policies, the following two separate charges were displayed to the customer:
   i. the "subtotal" (i.e., the "retail rate") that consisted of the combined amount of the wholesale rate and Orbitz's facilitation fee; and
   ii. the "taxes and fees," which reflected the total of the tax recovery charge and Orbitz's additional service fee;

2) Orbitz transmitted the customer's reservation request to the hotel through the extranet; the hotel accepted the reservation by sending Orbitz a confirmation number through the extranet;

---

[3] Orbitz also used another model to facilitate hotel reservations, however, its transactions under that model are not at issue in this case. (Pet'r & Resp't Jt. Stip. Facts ¶¶ 33-37.)

Orbitz provided the confirmation number to the customer and charged the customer's credit card for an amount totaling the retail rate and the taxes and fees; Orbitz was the merchant of record for the transaction;

3) the customer subsequently checked into the hotel and, upon check-out, paid for incidental charges only (e.g., room service, in-room movies, etc.);

4) after the customer checked out of the hotel, the hotel invoiced Orbitz for the wholesale rate and tax recovery charge; Orbitz retained the facilitation and service fees as payment for facilitating the pre-paid reservation; the hotel remitted the tax recovery charge to the Department.

(See Jt. Stip. ¶¶ 38-65, Ex. 1 ¶¶ 2, 5-6, Exs. 9-10.)

In December of 2007, the Department issued sales and innkeeper's tax Investigation Reports to Orbitz. (Jt. Stip. ¶¶ 14, 17, Exs. 2-3.) In its Investigation Reports, the Department explained that Orbitz owed over $200,000 in sales tax, innkeeper's tax, and interest for the period at issue because it should have collected taxes based on the retail rate, not merely the wholesale rate, of the hotel rooms. (See Jt. Stip. ¶¶ 14-23, Exs. 2-3.) On May 5, 2008, the Department issued Proposed Assessments against Orbitz. (Jt. Stip. ¶ 24, Ex. 4.) On June 19, 2008, Orbitz filed a protest. (Jt. Stip. ¶ 25, Ex. 5.) On November 24, 2008, the Department, in two Letters of Findings, denied Orbitz's protest. (Jt. Stip. ¶ 27, Ex. 6.)

On March 30, 2009, after the Department denied its request for rehearing, (Jt. Stip. ¶¶ 28-29, Exs. 7-8), Orbitz initiated this original tax appeal. On August 2, 2013, both parties moved for summary judgment and designated evidence in support of their respective motions. On January 17, 2014, the Court held a hearing on the cross-motions. Additional facts will be supplied as necessary.

4

**STANDARD OF REVIEW**

Summary judgment is proper when the designated evidence demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a motion for summary judgment, the Court will construe all properly asserted facts and reasonable inferences drawn therefrom in favor of the non-moving party. See Scott Oil Co. v. Indiana Dep't of State Revenue, 584 N.E.2d 1127, 1128-29 (Ind. Tax Ct. 1992). Cross-motions for summary judgment do not alter this standard. Horseshoe Hammond, LLC v. Indiana Dep't of State Revenue, 865 N.E.2d 725, 727 (Ind. Tax Ct. 2007), review denied.

**LAW**

During the period at issue, Indiana imposed a 6% sales tax on retail transactions made in Indiana. IND. CODE § 6-2.5-2-1(a) (2004); IND. CODE § 6-2.5-2-2(a) (2004) (amended 2008). A retail transaction was defined as "a transaction of a retail merchant that constitute[d] selling at retail[.]" IND. CODE § 6-2.5-1-2(a) (2004) (emphasis added). In the context of the hotel industry

> (a) [a] person is a retail merchant making a retail transaction when the person rents or furnishes rooms, lodgings, or other accommodations, such as booths, display spaces, banquet facilities, and cubicles or spaces used for adult relaxation, massage, modeling, dancing, or other entertainment to another person:
>
> > (1) if those rooms, lodgings, or accommodations are rented or furnished for periods of less than thirty (30) days; and
> > (2) if the rooms, lodgings, or accommodations are located in a hotel, motel, inn, tourist camp, tourist cabin, gymnasium, hall, coliseum, or other place, where rooms, lodgings, or accommodations are regularly furnished for consideration.

5

> (b) Each rental or furnishing by a retail merchant under subsection (a) is a separate unitary transaction regardless of whether consideration is paid to an independent contractor or directly to the retail merchant.

IND. CODE § 6-2.5-4-4(a)-(b) (2004) (amended 2016).

Indiana also imposed several innkeeper's taxes at rates that differed per county. See, e.g., IND. CODE § 6-9-3-1 et seq. (2016) (regarding Floyd and Clark Counties); IND. CODE § 6-9-8-1 et seq. (2016) (regarding Marion County); IND. CODE § 6-9-9-1 et seq. (2016) (regarding Allen County); IND. CODE § 6-9-15-1 et seq. (2016) (regarding Jefferson County); IND. CODE § 6-9-18-1 et seq. (2016) (regarding Harrison, Scott, and Shelby Counties). The innkeeper's taxes were similar to sales taxes because they were generally "levied on every person engaged in the business of renting or furnishing, for periods of less than thirty (30) days, any lodgings in any hotel, motel, inn, tourist camp, tourist cabin, or any other place in which lodgings are regularly furnished for a consideration." See, e.g., IND. CODE § 6-9-9-2(a) (2004). Moreover, specific innkeeper's tax provisions required the taxes to be imposed and administered in the same manner as the sales tax unless the statutory schemes conflicted or were inconsistent with one another. See, e.g., I.C. § 6-9-9-2(d).

**ANALYSIS**

The parties agree that no genuine issues of material fact exist for resolution at trial. (See, e.g., Pet'r Br. Opp'n Resp't Mot. Summ. J. ("Pet'r Opp'n Br.") at 1.) Moreover, finding a liability for sales tax under Indiana Code § 6-2.5-4-4 necessitates finding a liability for the innkeeper's taxes because both taxes were imposed based on

the same tax incidents during the period at issue.[4] (See, e.g., Pet'r Opp'n Br. at 1, n.1.) Accordingly, the question before the Court is whether, as a matter of law, the Department erred in assessing additional sales and innkeeper's taxes against Orbitz based on the retail rate of Indiana hotel rooms rather than on the wholesale rate that Orbitz used. More specifically, the resolution of this dispute requires the application of the undisputed facts to two interrelated questions of law: 1) whether Orbitz was a retail merchant during the period at issue; and 2) what was the proper measure of the tax base. (See, e.g., Hr'g Tr. at 12-16, 108-11.)

## 1. Retail Merchant

To be a retail merchant, Orbitz would have had to rent or furnish rooms to others for consideration for a period of less than thirty days. See I.C. § 6-2.5-4-4(a). The statutory definition of "retail merchant" did not define the words "rent" or "furnish." See generally I.C. § 6-2.5-4-4. Nevertheless, the word "rental," which is synonymous with the word "rent," was defined as "any transfer of possession or control of tangible personal property for a fixed or indeterminate term for consideration[.]" IND. CODE § 6-2.5-1-21(a) (2004). This definition expressly applied to all of Article 2.5. I.C. § 6-2.5-1-

---

[4] Over the last several years, a number of other jurisdictions have examined the tax implications arising from transactions in which online travel companies like Orbitz facilitated pre-paid reservations on behalf of local hoteliers. See, e.g., Louisville/Jeffersonville Cnty. Metro Gov't v. Hotels.com, L.P., 590 F.3d 381 (6th Cir. 2009); City of Birmingham v. Orbitz, LLC, 93 So.3d 932 (Ala. 2012); Alachua Cnty. v. Expedia, Inc., 175 So.3d 730 (Fla. 2015); City of Atlanta v. Hotels.com, 710 S.E.2d 766 (Ga. 2011); Expedia, Inc. v. City of Columbus, 681 S.E.2d 122 (Ga. 2009); Travelocity.com, L.P. v. Dir. of Taxation, 346 P.3d 157 (Haw. 2015); Montana Dep't of Revenue v. Priceline.com, Inc., 354 P.3d 631 (Mont. 2015); Travelocity.com LP v. Wyo. Dep't of Revenue, 329 P.3d 131 (Wyo. 2014); Travelscape, LLC v. S.C. Dep't of Revenue, 705 S.E.2d 28 (S.C. 2011). Indeed, both parties have cited many of these decisions in support of their respective positions. (Compare, e.g., Pet'r Mem. at 23-26 with Resp't Resp. Pet'r Mot. Summ. J. at 2-9.) Because each of the cited cases, like the one before the Court here, is dependent on state-specific statutory language for its resolution, see, e.g., Louisville/Jeffersonville Cnty., 590 F.3d at 384-89, the Court does not rely on them or find them persuasive.

21(c).

The Department claims that Orbitz was a retail merchant that rented hotel rooms during the period at issue because the Hotel Listing Agreements "convey[] to Orbitz the right to market and sell or rent hotel rooms[,]" which in effect is the "transfer of possession or control of Indiana hotel rooms . . . for consideration." (See Resp't Resp. Pet'r Mot. Summ. J. ("Resp't Resp. Br.") at 14, 19.) The Department relies on the language of the Hotel Listing Agreements that states that the "[h]otel agrees to (i) hold and commit a block of rooms at the [hotel] to Orbitz for booking on the Orbitz [website] and (ii) engage Orbitz to provide hotel marketing services, whereby Orbitz will offer users of the Orbitz [website] the ability to book confirmed, prepaid reservations at the [hotel]." (See Resp't Br. Supp. Mot. Summ. J. ("Resp't Br.") at 7-11; Resp't Reply Br. Supp. Mot. Summ. J. (both referring to Jt. Stip., Ex. 1 ¶ 2).) Nonetheless, the undisputed material facts show that the Hotel Listing Agreements merely provided Orbitz with the right to confirm a pre-paid reservation for a hotel room, while the hoteliers themselves, having exclusive possession and control of the rooms, were alone able to transfer possession and control. (See Jt. Stip. ¶¶ 58-60.)

The Indiana Court of Appeals' decision in 2625 Building Corp. v. Deutsch, 385 N.E.2d 1189 (Ind. Ct. App. 1979) supports this conclusion. In that case, a traveler sought a refund of the advance payment he made to an Indiana hotel to reserve six hotel rooms during the 1973 Indianapolis 500 Mile Race weekend. See 2625 Bldg. Corp. v. Deutsch, 385 N.E.2d 1189, 426-27 (Ind. Ct. App. 1979). The court held in favor of the traveler because, among other things, the hotel's acceptance of his pre-paid reservation created a contract under which the hotel's obligation to provide the hotel

8

rooms remained executory[5] until cancellation. See id. at 1191-92. Accordingly, a hotel's obligation to transfer possession of its hotel rooms (i.e., its rental of the hotel rooms) to customers who made pre-paid reservations directly with either the hotel or an independent contractor remains executory until the customer cancels the reservation or checks-into the hotel. See id.; see also I.C. § 6-2.5-4-4. The facts in this case establish that the hoteliers, not Orbitz (the independent contractor), delivered or transferred possession and control of hotel rooms to customers during the check-in process. (See Jt. Stip. ¶¶ 58-60, Ex. 1 ¶ 10(e).) Accordingly, as a matter of law, Orbitz is not a retail merchant under Indiana Code § 6-2.5-4-4(a).

### 2. The Tax Base

The Hotel Listing Agreements require that Orbitz calculate the applicable taxes based on the wholesale rate of the hotel rooms, i.e., the retail rate minus Orbitz's facilitation fee. (See Jt. Stip. ¶ 55(a), Ex. 1 ¶ 5(a).) Accordingly, Orbitz collected tax based on the wholesale rate of the hotel rooms. (See Jt. Stip. ¶¶ 56, 58, 61-65.)

The Department maintains that Orbitz should have collected tax based on the retail rate because the portion paid by the customer that was attributable to Orbitz's facilitation fee was expressly taxable as part of a unitary transaction. (See Resp't Br. at 9-10; Resp't Resp. Br. at 16-17, 20-24.) Orbitz contends, however, that the tax base was properly measured by the wholesale rate of the hotel rooms because the rental of hotel rooms simply were not, as a matter of law, a unitary transaction. (See Pet'r Mem. Supp. Mot. Summ. J. ("Pet'r Mem.") at 26-29; Pet'r Br. Opp'n at 10-12; Pet'r Reply

---

[5] "An executory contract is one in which a party binds himself to do or not to do a particular thing, whereas an executed contract is one in which the object of the agreement is performed and everything that was to be done is done." 2625 Bldg. Corp. v. Deutsch, 385 N.E.2d 1189, 1191 (Ind. Ct. App. 1979) (citation omitted).

Supp. Mot. Summ. J. ("Pet'r Reply Br.") at 12-14.) Orbitz explains that Indiana caselaw establishes that unitary transactions are limited to "situations where the <u>same</u> retail merchant has provided a customer with <u>both</u> a service and the tangible personal property." (<u>See</u> Pet'r Reply Br. at 14 (<u>citing</u> <u>Cowden & Sons Trucking, Inc. v. Indiana Dep't of State Revenue</u>, 575 N.E.2d 718 (Ind. Tax Ct. 1991)).) Consequently, Orbitz maintains that a unitary transaction could not have occurred here given the indisputable lack of unity between its out-of-state transactions (<u>i.e.,</u> facilitating hotel reservations) and those of the actual retail merchants (<u>i.e.,</u> the hoteliers that rent the rooms). (<u>See</u> Pet'r Mem. at 19; Pet'r Reply Br. at 13-14; Hr'g Tr. at 68-79.)

The Court's finding above that Orbitz is not a retail merchant relieves Orbitz of liability for sales or innkeeper's taxes regardless of the statutory proclamation that each rental or furnishing of a hotel room is a unitary transaction.[6] <u>See</u> I.C. § 6-2.5-4-4(b). Accordingly, the hoteliers, as retail merchants in these transactions, are liable for any additional assessments of sales or innkeeper's taxes that might be due. <u>See</u> I.C. § 6-2.5-2-1(b); IND. CODE § 6-2.5-6-7 (2004) (amended 2008); IND. CODE § 6-2.5-9-3 (2004) (amended 2013).

## CONCLUSION

During the period at issue, the Department erred in issuing sales and innkeeper's

---

[6] Because Indiana Code § 6-2.5-4-4(b) deems these transactions to be unitary, the inquiry whether the wholesale rate or the retail rate of the hotel rooms was the proper measure of the tax base is answered solely by determining whether Orbitz's provision of facilitation services occurred prior to the delivery of the hotel rooms to customers. <u>See</u> IND. CODE § 6-2.5-4-1(e) (2004). <u>See also</u> <u>Howland v. Indiana Dep't of State Revenue</u>, 790 N.E.2d 627, 629-30 (Ind. Tax Ct. 2003) (indicating that when a taxpayer's services were performed before the tangible personal property was transferred, the transactions were inextricable and indivisible and the services were taxable); <u>Greensburg Motel Assocs., L.P. v. Indiana Dep't of State Revenue</u>, 629 N.E.2d 1302, 1306 (Ind. Tax Ct. 1994) (indicating that for sales tax purposes, the rental of hotel rooms equates to the selling of tangible personal property).

tax assessments against Orbitz based on the retail rate of Indiana hotel rooms as a matter of law because the hoteliers, as the retail merchants, were liable for the taxes, not Orbitz. The Court therefore GRANTS summary judgment in favor of Orbitz and against the Department.

SO ORDERED this 20th day of December 2016.

_____
Martha Blood Wentworth
Judge, Indiana Tax Court

Distribution: Howard E. Kochell, Randal J. Kaltenmark, Ziaaddin Mollabashy, Elizabeth B. Herrington, Catherine A. Battin, Megan Thibert-Ind, Jeffery A. Rossman, Jessica R. Gastineau.