ATTORNEYS FOR APPELLANTS

Jonathan D. Mattingly
Sean P. Burke
Hamish S. Cohen
Jeffery Furminger
Mattingly Burke Cohen & Biederman LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Bryan S. Redding
Caitlin R. Jared
Redding Law, LLC
Carmel, Indiana



FILED
Sep 29 2020, 9:45 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

Terri Symons, John Nauyokas, Jennifer Reynolds, and David Dennison,

*Appellants-Defendants/Counterclaim Plaintiffs,*

v.

Gary Fish and Jeremey Fish,

*Appellees-Plaintiffs/Counterclaim Defendants.*

September 29, 2020

Court of Appeals Case No. 20A-PL-395

Appeal from the Hamilton Superior Court

The Honorable Michael A. Casati, Judge

The Honorable Steven R. Nation, Judge

Trial Court Cause No. 29D01-1508-PL-6964

**Najam, Judge.**

## Statement of the Case

Terri Symons appeals the trial court's judgment for Gary Fish and Jeremey Fish ("the Sellers") following a jury trial on the Sellers' complaint for breach of contract arising from the sale of a business. Symons presents seven issues for our review, which we restate as the following four issues:

1.  Whether a contract clause providing for treble damages is an unenforceable penalty.

2.  Whether the Sellers' complaint is time barred by an eighteen-month contractual limitations period.

3.  Whether the evidence or the parties' indemnification clause supports an award of damages greater than $250,000.

4.  Whether Symons has met her burden on appeal to show that the trial court abused its discretion in the award of attorneys' fees and costs to the Sellers.

We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

On June 3, 2011, Symons, John Nauyokas, Jennifer Reynolds, and David Dennison (collectively, "the Buyers")[1] purchased Breath of Life Home Medical Equipment and Respiratory Services, Inc. ("the Company") from the Sellers

---

[1] Only Symons participates in this appeal.

and other shareholders. The parties' stock purchase agreement ("the contract") provided in relevant part as follows:

> 5.2 <u>Personal Guaranties.</u> Within sixty (60) days of Closing . . . Buyer[s] will obtain the release or suitable replacement of any personal guaranties in the name or names of any of the selling [S]hareholders in association with Company business. In the event Buyer[s are] unable or unwilling to release or replace the personal guaranties of all the Shareholders then Buyer[s], jointly and severally[,] will *indemnify and hold harmless* any Shareholder *and will reimburse* the Shareholder three (3) times the amount of any loss, liability, claim, damage, expense (including reasonable costs and of investigation and defense and reasonable attorneys' fees and expenses) (collectively, "Damages")[] arising from or in connection with any personal guaranties of any named Shareholders. At closing, Buyer[] John Nauyokas, current CEO of Company, will provide to Shareholders a written listing of all vendors, suppliers[,] or other third[ ]parties associated with or doing business with the Company that could have a personal guaranty from the Shareholders[,] including contact information with a minimum of an address and phone number. Within thirty (30) days following Closing, Shareholders will provide Buyer[] John Nauyokas[] a list of vendors or suppliers subject to this provision. Any vendor, supplier[,] or other party not disclosed by Buyer[] John Nauyokas[] at closing will automatically be subject to this provision.

Appellant's App. Vol. II at 19 ("Section 5.2") (emphasis added). The contract further provided in relevant part:

> 7.1 <u>Survival</u>. Unless otherwise provided herein, all representations, warranties, covenants, and obligations in this Agreement . . . shall survive the Closing for a period of eighteen (18) months following the Closing Date.

*Id.* at 21 ("Section 7.1").

[4]     Subsequent to their purchase of the Company, the Buyers did not obtain the release or replacement of the personal guaranties of the Sellers and other shareholders to Integrated Medical Systems, Inc. ("IMS"), a vendor of medical equipment for the Company. The Company then defaulted on more than $800,000 in liabilities owed to IMS, and, in November of 2014, IMS brought suit in Illinois against the Sellers to recover on their personal guaranties.

[5]     The Sellers entered into a stipulated judgment with IMS, which included a settlement agreement, ("the stipulated judgment"), in relevant part as follows:

> 1.     Judgment . . . is hereby entered in favor of [IMS] and against [the Sellers] . . . in the amount of [$831,222] . . . .
>
> 2.     . . . *[E]nforcement of the Judgment is stayed* on the conditions that [the Sellers] pay IMS [$250,000] in the following monthly installments . . . .
>
> 3.     [The Sellers] shall use their best efforts to prosecute [a] lawsuit [against the Buyers] . . . .
>
> 4.     [The Sellers] will promptly provide IMS with any settlement documents or Court order related to any recovery [from the Buyers], and any such recovery . . . shall be paid [by the Sellers to IMS] as follows:
>
>> a.  First to the payment of the reasonable attorney fees and costs incurred by [the Sellers] in the [suit against the Buyers];

b. Second to the payment to IMS for any attorney fees and Court costs incurred by IMS in the [Sellers' suit against the Buyers];

c. Third to IMS to satisfy any amounts remaining due and owing to IMS pursuant to Paragraph 2 above; and

d. After payments (a) – (c) are made from the Settlement Proceeds, the remaining amount of [any such r]ecovery shall be split 50/50 between IMS . . . and [the Sellers] . . . .

\* \* \*

6. If [the Sellers] make all of the payments to IMS specified in this Stipulated Judgment, comply with all of the terms of this Stipulated Judgment[,] and if IMS incurs no liability in the [Sellers' suit against the Buyers] other than the payment of its reasonable attorney fees and costs, *IMS will provide [the Sellers] with a release and satisfaction of this Stipulated Judgment.*

7. If [the Sellers] fail to timely pay any of the payments required by this Stipulated Judgment or otherwise fail to comply with the terms of the Stipulated Judgment, *IMS may immediately proceed to enforce the Stipulated Judgment in the amount of the Judgement [sic], less any payments made . . . .*

*Id.* at 120-22 (emphases added).

In August of 2015, the Sellers filed the instant suit against the Buyers for breach of contract for failure to obtain the release or replacement of the Sellers' personal guaranties under Section 5.2 of the contract. The Sellers sought a judgment for three times the amount of the alleged damages, including three

times the attorneys' fees and costs.  The Buyers repeatedly moved for judgment on the ground that, under Section 7.1, the Sellers' suit was time barred because it was not filed within eighteen months of the closing.  In particular, the Buyers moved for judgment on the pleadings, summary judgment, and judgment on the evidence, and they filed a motion to correct error, on that theory.  The trial court denied all of those requests.  Following a jury trial, the jury found for the Sellers in the amount of $831,222.  The court further awarded the Sellers their reasonable costs and attorneys' fees, and then tripled the award under Section 5.2 and entered judgment against the Buyers in the amount of $3,459,670.74.[2] This appeal ensued.[3]

## Discussion and Decision

### Issue One:  Whether the Treble-Damages Clause in Section 5.2 is an Unenforceable Penalty

[7]     On appeal, Symons first asserts that the treble-damages clause in Section 5.2 is not a proper liquidated damages clause but, rather, is an unenforceable penalty. We addressed liquidated damages in *Gershin v. Demming*, 685 N.E.2d 1125, 1127-28 (Ind. Ct. App. 1997):

> A typical liquidated damages provision provides for the forfeiture of a stated sum of money upon breach without proof of damages.

---

[2]  The judgment was almost ten times the $350,000 purchase price for the Company under the contract.

[3]  Two different trial judges presided over this case.  The initial proceedings through the end of 2018 were presided over by Judge Steven R. Nation.  Thereafter, Judge Michael A. Casati presided over the remainder of the proceedings, including the jury trial and the entry of judgment on the jury's verdict.

Liquidated damages provisions are generally enforceable where the nature of the agreement is such that when a breach occurs the resulting damages would be uncertain and difficult to ascertain. However, the stipulated sum will not be allowed as liquidated damages unless it may fairly be allowed as compensation for the breach.

We are tolerant of provisions within contracts which provide for liquidated damages. *Where the sum stipulated in the agreement is not greatly disproportionate to the loss likely to occur, the provision will be accepted as a liquidated damages clause and not as a penalty, but where the sum sought to be fixed as liquidated damages is grossly disproportionate to the loss which may result from the breach, the courts will treat the sum as a penalty rather than as liquidated damages.* In determining whether a stipulated sum payable on a breach of contract constitutes liquidated damages or a penalty, the facts, the intention of the parties and the reasonableness of the stipulation under the circumstances of the case are all to be considered. *The distinction between a penalty provision and one for liquidated damages is that a penalty is imposed to secure performance of the contract and liquidated damages are to be paid in lieu of performance.* Notwithstanding a plethora of abstract tests and criteria for the determination of whether a provision is one for a penalty or liquidated damages, there are no hard and fast guidelines to follow. The question whether a liquidated damages clause is valid, or whether it constitutes a penalty, is a pure question of law for the court.

(Emphases added.) This Court has repeatedly recognized that damages clauses that contain multipliers of two and three times a stipulated sum are unenforceable penalties. *E.g.*, *Coffman v. Olson & Co., P.C.*, 906 N.E.2d 201, 209-10 (Ind. Ct. App. 2009) (concluding that multipliers of two and three times a stated sum were unenforceable penalties), *trans. denied*; *Hahn v. Drees, Perugini &*

*Co.*, 581 N.E.2d 457, 463 (Ind. Ct. App. 1991) (voiding a treble-damages clause); *Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208, 215-16 (Ind. Ct. App. 1982) (voiding a treble-damages clause).

[8]     Section 5.2 states in relevant part that, should the Buyers be

> unable or unwilling to release or replace the personal guaranties of all the Shareholders[,] then Buyer[s], jointly and severally[,] will indemnify and hold harmless any Shareholder and will *reimburse the Shareholder three (3) times the amount of any loss*, liability, claim, damage, expense (including reasonable costs and of investigation and defense and reasonable attorneys' fees and expenses) (collectively, "Damages")[] arising from or in connection with any personal guaranties of any named Shareholders

Appellant's App. Vol. II at 19 (emphasis added).  In other words, where, as here, Symons and the other Buyers failed to obtain the release or replacement of the Sellers' personal guaranties, the Buyers would owe the Sellers treble damages.  The trial court found that "Section 5.2 is not a penalty provision." Appellant's App. Vol. III at 122.  We cannot agree.  The treble-damages clause in Section 5.2 is a textbook example of an unenforceable penalty.

[9]     Still, the Sellers assert that the treble-damages clause is not an unenforceable penalty but is a permissible "agreed damages provision" properly applied in this case.  Appellees' Br. at 16.  The Sellers specifically contend that our reasoning in *Gershin,* where we approved a liquidated-damages clause, should apply here.  *Id.* at 17.  In *Gershin*, we said that liquidated-damages provisions are "generally enforceable where the nature of the agreement is such that when a

breach occurs the resulting damages would be uncertain and difficult to ascertain." 685 N.E.2d at 1127. The Sellers assert that liquidated damages are appropriate in this case because they have suffered economic losses that are difficult to ascertain, including an impact upon their credit standing, an impairment of their capital resources, opportunity costs, inconvenience in the time and money required to litigate, and an emotional toll. Appellees' Br. at 18-19. And the Sellers maintain that these losses were reasonably foreseeable but are difficult to quantify and conclude that the agreed damages provision in Section 5.2 represents the will of sophisticated contracting parties.

[10] But our inquiry into whether liquidated damages are appropriate does not end with a determination that damages in the event of a breach would be uncertain and difficult to ascertain. A stipulated sum will not be allowed as liquidated damages unless it may fairly be allowed as compensation for the breach. *Gershin*, 685 N.E.2d at 1127. We must also address and consider the fundamental distinction between liquidated damages and a penalty and the caveat in *Gershin* that, "where the sum sought to be fixed as liquidated damages is grossly disproportionate to the loss which may result from the breach, the courts will treat the sum as a penalty rather than as liquidated damages." *Id.* at 1128.

[11] The liquidated damages in *Gershin* were calibrated and corresponded with the magnitude of the breach. *Id.* at 1130. A damage award must reference some fairly defined standard. *Coffman*, 906 N.E.2d at 210. Here, in contrast, there is no apparent or discernable relationship or correlation between the treble

damages claimed and the losses actually suffered by the Sellers. Indeed, there is no evidence that treble damages even remotely approximate the Sellers' actual damages. The treble damages are not commensurate with the magnitude of the breach and are grossly disproportionate to the loss. *Gershin*, 685 N.E.2d at 1128. Thus, the treble-damages clause does not provide for liquidated damages in lieu of performance but for payment of a penalty to secure performance of the contract. *Id.* at 1127-28. Such damages are void and unenforceable, and we reverse the trial court's judgment awarding treble damages under Section 5.2.

### *Issue Two: Whether Section 7.1 Provides for an Eighteen-Month Limitations Period*

Symons next asserts that the trial court improperly denied her numerous requests for judgment on the Sellers' action as untimely under Section 7.1. As with the interpretation of Section 5.2, the interpretation of Section 7.1 is a pure question of law that we review *de novo*. *See, e.g.*, *Heraeus Med., LLC v. Zimmer, Inc.*, 135 N.E.3d 150, 152 (Ind. 2019) (citing *Harrison v. Thomas*, 761 N.E.2d 816, 818 (Ind. 2002)).

Again, Section 7.1 states in relevant part:

> 7.1 <u>Survival</u>. Unless otherwise provided herein, all representations, warranties, covenants, and obligations in this Agreement . . . shall survive the Closing for a period of eighteen (18) months following the Closing Date.

Appellant's App. Vol. II at 21.

[14] In their brief on appeal, the Sellers assert that the trial court properly denied Symons' numerous motions for judgment under Section 7.1 because "there is no clear statute of limitations indicated" in that Section, which we take to mean that Section 7.1 does not contain language that requires a complaint for breach of contract to be filed within eighteen months of the closing. Appellees' Br. at 26. We agree with the Sellers. The plain language of Section 7.1 speaks to the Buyers' obligations under the contract—those obligations that remained to be performed by Buyers within the first eighteen months after the closing.[4] That section does not shorten the time within which a complaint for breach of contract can be filed. The Sellers' complaint is not time barred. The trial court properly rejected each of Symons' numerous motions to the contrary, and we affirm those decisions.[5]

### Issue Three: Whether the Evidence or the Contract's Indemnification Clause Supports a Judgment for the Sellers greater than $250,000

[15] Symons next asserts that the Sellers' actual damages to IMS from the Buyers' breach of Section 5.2 was $250,000, not $831,222, and, as such, there is

---

[4] In fact, Section 7.1 only applies if the contract language at issue did not provide a different timeframe. But Section 5.2, the only other provision at issue here, plainly required the Buyers to fulfill their obligations under that provision within sixty days of closing. As such, it is also clear that Section 7.1 does not apply to the Sellers' complaint at all.

[5] As we conclude that Section 7.1 does not create a period of limitations for the commencement of a breach-of-contract action, we need not consider Symons' arguments of error on issues of fraudulent concealment and the tolling of any such purported limitations period.

insufficient evidence to support the jury's award of damages.[6] In reviewing this issue, we will not reverse if the damage award "is within the scope of the evidence . . . ." *Int'l Bus. Machs. Corp. v. State*, 138 N.E.3d 255, 258 (Ind. 2019). A damage award will not be reversed upon appeal unless it is based on insufficient evidence or is contrary to law. *Haas Carriage, Inc. v. Berna*, 651 N.E.2d 284, 289 (Ind. Ct. App. 1995). In determining whether the award is within the scope of the evidence, we may not reweigh the evidence or judge the credibility of witnesses. *Id.*

[16] This issue turns on the stipulated judgment and the evidence of the Sellers' installment payments made as provided under the judgment. The stipulated judgment is an agreed entry and begins by stating that "the parties have entered into a settlement agreement," which the Illinois trial court adopted and ordered. Appellant's App. Vol. II at 120. An agreed entry must be construed in the same manner as any other agreement or contract. *Battershell v. Prestwick Sales, Inc.*, 585 N.E.2d 1, 4 (Ind. Ct. App. 1992). And, again, the interpretation or legal effect of a contract is a question of law to be determined by the court. *Id.* at 5.

[17] The parties stipulated to a judgment of $831,222 in favor of IMS and against the Sellers, but enforcement of the stipulated judgment was stayed, and the judgment was not, in fact, final. By its own terms the judgment was contingent

---

[6] The question on appeal here is properly framed as whether sufficient evidence supports the jury's award of damages, and we reject the Sellers' argument that Symons did not properly preserve this issue for our review. *See TRW Vehicle Safety Sys., Inc. v. Moore*, 936 N.E.2d 201, 224-25 (Ind. 2010).

upon the occurrence of future events. The judgment includes a settlement, which limits the Seller's liability to $250,000, provided that the Sellers make all the monthly payments specified and otherwise comply with the terms of the settlement agreement, in which event IMS will provide the Sellers with a release and satisfaction of the full $831,222 judgment. Only if the Sellers should fail to make the installments as agreed or otherwise fail to comply with the terms of the stipulated judgment may IMS "proceed to enforce the Stipulated Judgment" in the amount of $831,222, less any payments previously made. Appellant's App. Vol. II at 122.

[18] Thus, the only evidence before the jury *at the time of trial* was that the stipulated judgment was an executory contract in which the outcome, one way or another, was subject to conditions precedent that had not yet occurred. "An executory contract is one in which a party binds himself to do or not to do a particular thing, whereas an executed contract is one in which the object of the agreement is performed and everything that was to be done is done." *Orbitz, LLC v. Ind. Dep't of State Revenue*, 66 N.E.3d 1012, 1017 n.5 (Ind. T.C. 2016) (citing *2625 Bldg. Corp. v. Deutsch*, 179 Ind. App. 425, 385 N.E.2d 1189, 1191 (1979)). There was more to be done. The stipulated judgment was provisional. By its unambiguous terms the $831,222 judgment was not a final judgment but a contingent liability that might or might not become final depending upon whether the Sellers performed the settlement agreement according to its terms. Under paragraph 6 of the stipulated judgment, if the Sellers made the payments

and otherwise performed as agreed, IMS would provide the Sellers with a release and satisfaction in full.

[19] At the time of the jury trial, the Sellers had made all the required installment payments to IMS and had prosecuted this suit against the Buyers as stipulated. Thus, at that time, enforcement of the judgment was stayed, and the total amount of the Sellers' actual loss to IMS under the stipulated judgment was not more than $250,000, plus attorneys' fees and costs. To support a damage award above that amount, the Sellers contend that the "plain and unambiguous language of the stipulated judgment" supports the jury award and that Symons has "mischaracterized the settlement," which is only a "conditional number." Appellees' Br. at 42-43.

[20] We cannot agree with the Sellers' reading of the stipulated judgment. As we have noted, an agreed entry is a contract. When we interpret a contract, we review the contract as a whole to ascertain the intent of the parties and construe the language of the contract so as not to render any words, phrases, or terms ineffective or meaningless. *B&R Oil Co. v. Stoler*, 77 N.E.3d 823, 827 (Ind. Ct. App. 2017), *trans. denied*. Instead, the Sellers focus entirely upon the total judgment amount to the exclusion of the settlement provisions, which, if executed, would require a release and satisfaction of the judgment. These provisions are interdependent and must be read together.

[21] When read correctly, it is clear that both the $831,222 total judgment amount and the $250,000 settlement amount are subject to conditions precedent. A

condition precedent is a condition that "must be fulfilled before the duty to perform . . . arises." *THQ Venture, Inc. v. SW, Inc.*, 444 N.E.2d 335, 339 (Ind. Ct. App. 1983). Here, provided that the Sellers satisfy the conditions precedent of making all the installment payments and otherwise complying with the terms of the stipulated judgment, the settlement provisions control the amount of the stipulated judgment. The total judgment amount supersedes the settlement amount and becomes enforceable only should the Sellers fail to make the installment payments as agreed or otherwise fail to comply with the terms of the settlement agreement.

[22] The jury was correctly given the following final instruction:

> If you decide that a party has breached the contract, the measure of damages is the amount that would put the non-breaching party in the same position he would have been had the contract been fulfilled.
>
> The non-breaching party may only recover the loss actually suffered and should not be placed in a better position than if there had been no breach of the contract.

Appellant's Supp. App. Vol. II at 13. This instruction recognizes that the appropriate measure of damages in a breach of contract case is the loss actually suffered as a result of the breach. *City of Jeffersonville v. Envt'l Mgmt. Corp.*, 954 N.E.2d 1000, 1015 (Ind. Ct. App. 2011). The non-breaching party is not entitled to be placed in a better position than it would have been if the contract had not been broken. *Id.* This means that the Buyers are not chargeable with a loss any greater than the loss the Sellers have actually incurred. The settlement

contained in the stipulated judgment reduced the Sellers' actual damages from $831,222 to $250,000 and, in its operation and effect, limited both the Sellers' liability to IMS and the Buyers' liability to the Sellers under Section 5.2 of the contract, again, provided, only that the Sellers perform as they agreed under paragraph 6 of the stipulated judgment.

[23] In addition, Section 5.2 of the contract provides for the Buyers to indemnify and hold Sellers harmless. Our Supreme Court has stated that "indemnification clauses are strictly construed and the intent to indemnify must be stated in clear and unequivocal terms." *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1132 (Ind. 1995). To indemnify means to "reimburse . . . for a loss suffered." *City of Hammond v. Plys*, 893 N.E.2d 1, 4 n.2 (Ind. Ct. App. 2008) (quoting Black's Law Dictionary 772 (7th ed. 1999)). Indemnity agreements are contracts subject to the rules and principles of contract construction. *Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 756 (Ind. Ct. App. 2002). If the words of an indemnity agreement are clear and unambiguous, they are to be given their plain and ordinary meaning. *Id.* We will construe an indemnity agreement to cover all losses and damages to which it reasonably appears the parties intended it to apply. *Id.* In an indemnity agreement, a "hold harmless" provision is synonymous with "indemnify" and signifies no separate duties. *Id.*

[24] The indemnification clause in Section 5.2 cannot be construed, strictly or otherwise, to mean that the Buyers agreed to indemnify the Sellers for any loss that the Sellers have not actually suffered. Indeed, such an interpretation cannot be reconciled with the concept of indemnification. Section 5.2 provides

that in the event the Buyers should be unable or unwilling to release or replace the guaranties of all the Shareholders, who are the Sellers, the Buyers "will reimburse" the Sellers. The payment of "damages" in excess of the loss actually suffered would not be an indemnification and reimbursement but a windfall, that is, "[a]n unanticipated benefit." *Windfall*, Black's Law Dictionary (11th ed. 2019). The language of the indemnification clause does not suggest, much less clearly and unequivocally provide, that the agreement to indemnify includes reimbursement for losses that have not been incurred. *See, e.g.*, *BC Osaka, Inc. v. Kainan Inv. Grps., Inc.*, 60 N.E.3d 231, 234 (Ind. Ct. App. 2016) (indemnification provisions are strictly construed and will not be held to provide for an indemnification unless so stated in clear and unequivocal terms). Again, it is axiomatic that a party injured by a breach of contract is limited in its recovery to the loss actually suffered. *Fowler v. Campbell*, 612 N.E.2d 596, 603 (Ind. Ct. App. 1993). Thus, we hold that the damage award of $831,222 is contrary to the plain meaning of the indemnification clause.

[25] The Sellers also speculate that economic conditions might cause them to miss a timely installment payment between now and September 2021, in which case IMS could seek the full $831,222 against the Sellers. But a fact finder "may not award damages on the mere basis of conjecture and speculation." *Marathon Oil Co. v. Collins*, 744 N.E.2d 474, 482 (Ind. Ct. App. 2001). And, again, the total judgment amount of $831,222 is subject to a condition precedent that has not occurred, namely, the Sellers' default on the settlement provisions. At the time of trial, the Sellers had not incurred actual damages in excess of $250,000.

As such, we conclude that the evidence is not sufficient to support the jury's award of damages above $250,000. And neither would a damage award greater than $250,000 constitute an indemnification and reimbursement of actual losses incurred by the Sellers. Accordingly, neither the evidence nor the indemnification clause supports a judgment for the Sellers on their breach-of-contract claim in an amount greater than $250,000, plus attorneys' fees and costs. On both grounds, any judgment for a greater sum is contrary to law.[7]

### Issue Four:  Award of Attorneys' Fees and Costs

Last, we turn to Symons' argument on appeal that the trial court abused its discretion when, apart from the award of damages, the court awarded attorneys' fees and costs to the Sellers. We review a trial court's award of attorney's fees for an abuse of discretion. *River Ridge Dev. Auth. v. Outfront Media, LLC*, 146 N.E.3d 906, 912 (Ind. 2020). An abuse of discretion occurs when the court's decision either clearly contravenes the logic and effect of the facts and circumstances or misinterprets the law. *Id.*

As an initial matter, we note that the trial court tripled the Sellers' award of attorneys' fees and court costs under Section 5.2 of the contract. As explained in Issue One, the trial court's judgment in this respect was erroneous, and we reverse the trebling of those amounts accordingly.

---

[7] It is possible that, in the future, the Sellers will fail to satisfy the conditions of the settlement agreement, in which case they may have a claim for additional damages against the Buyers, but there was no such evidence before the jury.

[29] Still, Symons also asserts that the court abused its discretion in the determination of the principal amount of the Sellers' attorneys' fees and costs. Symons' argument here is that the Sellers' evidence of fees recites entries that are too often "generic, vague, and/or ambiguous." Appellant's Br. at 41. But the entries Symons complains of were accompanied by an affidavit of the submitting attorney in which the attorney represented that those entries were in connection with the Sellers' matter, and they were sufficiently definite for the court to determine a reasonable basis for the fee award. Accordingly, we cannot say the trial court abused its discretion in its determination of the principal amount of attorneys' fees and costs to the Sellers.

## Conclusion

[30] In sum, we affirm the trial court's decisions denying Symons' several motions for judgment on the Sellers' claims as untimely under Section 7.1, and we affirm the court's primary award of attorneys' fees and costs to the Sellers. However, we reverse the court's award of treble damages, including the trebling of attorneys' fees and costs, under Section 5.2, and we conclude that a damage award greater than $250,000 is not supported by the evidence, the stipulated judgment, or the indemnification clause as a matter of law. We remand for the trial court to recalculate the Sellers' damages, attorneys' fees, and costs in a manner not inconsistent with this opinion.[8]

---

[8] We deny the Sellers' request for an entry of appellate attorneys' fees and costs.

Affirmed in part, reversed in part, and remanded with instructions.

Bradford, C.J., and Mathias, J., concur.